**Joseph L. MESSA, Jr., John McDonald and Carol McDonald, h/w, 47 West 18th St. Condominium Ass'n, Plaintiffs,**

v.

**OMAHA PROPERTY & CASUALTY INSURANCE COMPANY, Defendant.**

**No. CIV.A. 99–2859(JBS).**

United States District Court, D. New Jersey.

March 8, 2000.

Joseph L. Messa, Jr., Ominsky & Messa, P.C., Marlton, NJ, for Plaintiffs.

Joseph D. Sams, Woodland Falls Corporate Park, Cherry Hill, NJ, and Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for Defendant.

## OPINION

SIMANDLE, District Judge.

The National Flood Insurance Program uses private insurers acting as fiscal agents of the United States Treasury to adjust and pay flood insurance claims for covered losses. This case raises the issue of whether an insured who is dissatisfied with the amount offered upon its flood loss may bring claims for extra-contractual causes of action (such as bad faith and punitive damages) against the insurer arising under state law, or whether such extra-contractual actions for improper claims processing are preempted by federal law.

In this case, plaintiffs Joseph L. Messa, Jr., John McDonald, Carol McDonald, and 47 West 18th St. Condominium Association ("the Association") seek compensatory and punitive damages and attorney's fees from defendant Omaha Property & Casualty Insurance Company ("Omaha"), allegedly

arising from a flood that caused damage to their property in February of 1998. According to the plaintiffs, defendant underpaid their claim arising from the flood and is responsible for breach of contract (both under provisions expressly stated in the contract and for breach of the duty of good faith and fair dealing owed under insurance contracts pursuant to New Jersey law), as well as for bad faith and punitive damages under New Jersey tort law. Defendant seeks to dismiss each of the state law based extracontractual claims for general damages, incidental damages, punitive damages, and attorney's fees, claiming that they are preempted by federal law. For the reasons herein expressed, this Court agrees that the state law-based, extra-contractual claims are preempted by federal law, and those claims will be dismissed. Plaintiffs' contractual claims will remain in the case.

## I. *Background*

The facts as alleged are as follows. Plaintiffs Joseph Messa, Carol McDonald, and John McDonald are citizens and residents of Pennsylvania and co-own a condominium unit located at 47 West 18th Street in Ocean City, New Jersey ("the insured property"). The Association is an organization located in Pennsylvania but which serves the interests of the owners of the insured property. Defendant Omaha is organized and exists under the laws of the State of Nebraska and has its principal place of business in Omaha, Nebraska, and it does continuous and systematic business in the State of New Jersey. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court also has federal question jurisdiction because the case involves the alleged breach of a Standard Flood Insurance Policy ("SFIP") issued pursuant to the National Flood Insurance Program ("NFIP"). *Van Holt v. Liberty Mutual Fire Ins. Co.*, 163 F.3d 161, 166 (3d Cir.1998).

On June 3, 1995, plaintiffs entered into a contract with defendant for insurance for direct physical loss by or from a flood for a period of one year and renewable thereafter at yearly intervals, Residential Condominium Building Association Policy No. 3006469286 ("the Policy"). The policy was renewed for several years, and was renewed again for the term of June 3, 1997 to June 3, 1998. The policy limit is $250,-000.00.

On February 5, 1998, a violent storm struck the southeastern coast of New Jersey, producing high winds, rain, and dangerously high levels of water and tidal flooding, leading to a Presidential emergency declaration, under FEMA 1206 DR NJ. As a direct result of this storm, according to the complaint, the insured property sustained severe and extensive flood damage which will require its owners to expend substantial sums in repair and replacement costs and costs associated with preventing against additional deterioration. Plaintiffs provided prompt notice to the defendant, who sent an adjustor, Paul Scull, to conduct an inspection of the insured property on March 11, 1998. Scull set the total claim payable at $6,664.73.

Upon receipt of defendant's Proof of Loss Report from Scull, plaintiffs immediately notified defendant of plaintiffs' disagreement with the estimate and informed defendant of their intention to secure the opinion of an independent engineer. On June 3, 1998, plaintiff Messa forwarded to defendant a copy of the report of F.A. Vinciguierra, P.E., an independent structural engineer, who projected the total costs at $71,500. According to plaintiffs, through defendant's alleged use of dilatory and bad faith tactics, defendant has refused, and continues to refuse, to offer and pay a reasonable sum in settlement of plaintiffs' claim, thereby violating the express terms of the contract, defendant's New Jersey state law obligations of good faith and fair dealing (read into contracts by New Jersey law), and the intent of the parties in the formation of the contract.

On June 14, 1999, plaintiffs filed a complaint in this Court alleging three counts.

In Count I, plaintiffs allege breach of contract, both under the express terms of the policy and under the duties of good faith and fair dealing read into every contract under New Jersey law. According to plaintiffs, defendant breached these duties by refusing to pay the actual value of the flood damages within a reasonable time, by failing and refusing to negotiate a good faith settlement of the claim, and by offering a vastly disproportionate amount of money in settlement of the claim. In Count II, plaintiffs alleged that defendant acted in bad faith through the above-named actions as well as through failing to send correspondence directly to the plaintiffs' address and failing to forward a full and complete copy of the renewed policy to plaintiffs (thus requiring them to resort to other means to obtain the policy). In Count III, plaintiffs allege that defendant's actions were willful, wanton, reckless, and malicious. Altogether, plaintiffs seek general damages, interest, costs, reasonable attorney's fees, consequential and incidental damages, and punitive damages.

Now before the Court is defendant's motion to dismiss the state law-based, extra-contractual claims for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).[1] For the reasons stated herein, defendant's motion will be granted.

## II. *Discussion*

### A. *Standards Upon a Motion to Dismiss*

■ A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted does not attack the merits of the case, but merely tests the legal sufficiency of the Complaint. *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all well-pleaded allegations in the Complaint and view them in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). In considering the motion, a district court must also accept as true any and all reasonable inferences derived from those facts. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir.1994). A court may not dismiss the Complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ The question before the court is not whether the plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, while the rules do not dictate that a "claimant set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149–50 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99).

### B. *Preemption*

■ Defendant seeks to dismiss plaintiffs' state law-based, extra-contractual claims under the theory that they are preempted by federal law, more specifically, the National Flood Insurance Act. State law is preempted by federal law in three

---

1. Defendant, at this time, does not seek dismissal of the breach of contract action which claims that the flood claim was improperly denied in whole or in part. Defendant only seeks to dismiss—and this Court only dismisses—those extra-contractual claims based in state law which could lead to compensatory, punitive, and consequential damages for claims handling, as well as attorneys fees. Plaintiffs are free to pursue their claims for the entire amount of costs associated with damage from the flood that they seek.

circumstances. First, federal law preempts state law if Congress' intent to supplant the state law with a federal law is explicitly stated in the federal statute. *See English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

■■ If no explicit statutory language exists, then "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* This can be implied if a pervasive regulatory scheme leaves no room for supplementation by state law or if a statute regulates a field dominated by the federal government. *Id.* However, the burden of proving that federal preemption is implied is heavy, for "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Building & Constr. Trades Council v. Associated Builders & Contractors*, 507 U.S. 218, 224, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993)(quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). Thus, Congress' intent must be "clear and manifest." *English*, 496 U.S. at 79, 110 S.Ct. 2270.

The third category of preemption is when a state law conflicts with a federal law such that it is impossible to comply with both federal and state laws, *id.*, or where state law poses as an obstacle to Congress' goals of the federal statute. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984)(citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

In the present case, the federal statute establishing the NFIP does not expressly preempt state regulation of flood insurance. Nor do state extra-contractual remedies for bad faith and punitive damages conflict with federal law such that it is impossible to follow both. If federal law preempts these state law-based, extra-contractual remedies, then it must be because Congress intended to fully occupy the field of flood insurance regulation. The remain-der of this Opinion will focus on determining Congress' intent regarding this question. In doing so, this Court shall follow the Third Circuit's statement in *Health Maintenance Org. v. Whitman*, 72 F.3d 1123, 1127 (3d Cir.1995), that "[t]o determine Congress' intent, we begin with the text of the statute in question, and then move on to 'the structure and purpose of the Act in which it occurs.'" *Id.* (quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins., Co.*, 514 U.S. 645, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995)). This Court shall also review other courts' determinations of the same and related issues.

### 1. *Background of the NFIP*

Plaintiffs' lawsuit presents a claim for breach of contract against an SFIP, which is a federally regulated and underwritten U.S. Government NFIP policy. The NFIP was established by Congress in 1968 pursuant to the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001 *et seq.* The program is federally subsidized and provides flood insurance below actuarial rates. *Gowland v. Aetna*, 143 F.3d 951 (5th Cir.1998). Though the program is designed to lose money, it actually costs the taxpayers far less than the taxpayers' annual bill for federally financed flood related disaster relief would be. 42 U.S.C. §§ 4001 and 4002.

Congress established the NFIP because of the unavailability of flood insurance from private insurance companies, which were unable to write flood insurance on an economically feasible basis. *Id.* The Program essentially has two objectives: (1) provide property owners with economically feasible flood insurance which was otherwise unavailable, and (2) require that new construction in flood prone areas be located and built in a manner which would reduce loss of life and property. *Id.* The Treasury was simply overburdened by flood costs without the NFIP because private insurers were unwilling to provide flood insurance, leaving the U.S. govern-

ment with huge flood-related disaster relief bills:

> [T]he principal purpose in enacting the Program was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance.

*Till v. Unifirst Fed. Savings & Loan Assoc.,* 653 F.2d 152, 159 (5th Cir.1981). *See also* 42 U.S.C. §§ 4001 & 4002. Therefore, Congress created a program by which federal financial participation encouraged private insurers to offer flood insurance in a nationally uniform way.

Initially, the NFIP was operated and administered primarily through the National Flood Insurers Association, an unincorporated pool of private insurers, under supervision of and with financial support from the Department of Housing and Urban Development ("HUD"). *Van Holt v. Liberty Mutual,* 163 F.3d 161 (3d Cir. 1998). The Association issued and serviced individual policies of flood insurance, processed claims for losses, and accepted responsibility for the defense of legal actions brought by policyholders under these agreements until December 31, 1977. On January 1, 1978, pursuant to 42 U.S.C. § 4071, however, the Secretary of HUD terminated that arrangement and assumed administration of the NFIP. 42 Fed.Reg. 25701 (1978). Also during that year, the Fifth Circuit issued its ruling in *West v. Harris,* 573 F.2d 873 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). In that case, the Fifth Circuit chose to apply federal law, holding that:

> Since the Flood Insurance Program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program in both a supervisory capacity and financially, it is clear that the interest in the uniformity of decision present in this case mandates the application of federal law. Thus, a prevailing plaintiff in a suit on a

flood insurance policy issued pursuant to the National Flood Insurance Act is not entitled to recover the statutory penalty and attorney's fees allowed by state insurance law for arbitrary denial of coverage

*Id.* at 881.

On April 1, 1979, pursuant to an Executive Order and a reorganization plan, FEMA was made principally responsible for the NFIP's operation. Executive Order 12127; 44 Fed.Reg. 19367. Financially, that means that the program is operated by the National Flood Insurance Fund operated by the Director of FEMA "in the Treasury of the United States." 42 U.S.C. § 4017. The Treasury reimburses insurers from the "cost incurred in [both] the adjustment and payment of any claims for flood losses." *Id.* at § 4017(d).

Under Plan B of the NFIA, the Director of FEMA is statutorily authorized by Congress to use federal employees and/or private "insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, as fiscal agents of the United States." *Id.* at § 4071(a)(1). Accordingly, FEMA promulgated the SFIP, set forth in 44 C.F.R. Pt. 61: App. A(1), (2), and (3), and provided for marketing and claims adjustment of that SFIP by private insurers operating as "Write Your Own" ("WYO") companies. 42 U.S.C. § 62.23. Today, these companies write over ninety percent of all SFIPs in the country. The regulations creating the WYO Program were established in 1983, the same year that Congress amended the NFIP jurisdictional statutes, 42 U.S.C. §§ 4053 and 4072, to add the words "original exclusive" in front of the word "jurisdiction."

WYO Program companies issue SFIPs in their names, 44 C.F.R. § 61.13(f), 62.23(a), and collect premiums in segregated accounts from which they pay claims and make necessary refunds under those policies. *Id.* at § 62, App. A, Arts. II(E), III(D), and III(E). After deducting the

companies' fees and administrative costs, premiums collected from policy holders are deposited in the National Flood Insurance Fund in the U.S. Treasury. 42 U.S.C. § 4017(d). "Premiums are federal funds from the moment they are collected," with interest earned thereon belonging to the United States (WYO companies must remit to the Treasury "all funds, including interest, not required to meet current expenditures"—currently limited to $5,000.00). 44 C.F.R. Pt. 62, App. A, Art. VII, B. In the absence of sufficient funds in their segregated accounts, WYO Program companies pay claims and make refunds by drawing on FEMA letters of credit from the U.S. Treasury. Thus, any payment on a claim, whether from FEMA or from a WYO, is "a direct charge on the public treasury." *Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir.1998).

■ No WYO Company has any permission to alter, vary, or waive any provision of an SFIP, as such actions may not be taken without the express written consent of the Federal Insurance Administrator. 44 C.F.R. Pt. 61.4(b), 61.13(d) and (3), 62.23(c) and (d). WYO carriers must "strictly construe and enforce" all SFIP provisions. *Gowland,* 143 F.3d at 953. Thus, WYO carriers could not alter the terms of claims handling set forth in the SFIP, even if such claims handling would violate the law of any particular state. WYO companies defend against claims but FEMA reimburses them for defense costs, 44 C.F.R. § 62.23(i)(6), because they are fiscal agents of the United States, 42 U.S.C. § 4071(a)(1), although they do not act as general agents of the United States, 44 C.F.R. § 62.63(g).

### 2. *Case Law*

In *Van Holt v. Liberty Mutual Fire Ins. Co.,* 163 F.3d 161 (3d Cir.1998), the Third Circuit considered a case in which a WYO company, rather than FEMA itself, was sued for allegedly violating New Jersey's Consumer Fraud Act, N.J.S.A. §§ 56:8–1 to 8–48, and New Jersey's common law

requiring parties to an insurance contract to act in good faith, when the WYO company failed to pay out on a claim. The Third Circuit held that despite the fact that the language of 42 U.S.C. § 4072 only states that there is exclusive, original federal jurisdiction for claims against FEMA under Part B of the NFIP, § 4072 also provides the federal courts with subject-matter jurisdiction over suits against WYO companies for insurance claim investigation and adjustment because those companies are the functional equivalent of FEMA in cases of flood insurance. 163 F.3d at 167.

FEMA, in an amicus curiae brief in the *Van Holt* case, contended that the state law claims should be dismissed because they are preempted by the NFIA. (Def.'s Br. Ex. A at 13.) FEMA argued that "[a]llowing State regulators to breathe down the necks of the WYO companies ... would make the 50 States coadministrators of the program along with FEMA, a result Congress plainly did not intend. It would also deprive the program of the national uniformity Congress did intend, and make a hodgepodge of the program, undermining the federal mission." *Id.* FEMA stated that if insureds are unhappy with the processing of their claim, they should report it to FEMA. *Id.* Because the Third Circuit then found that there was no evidence of fraud or bad faith to support claims under the Consumer Fraud Act or New Jersey tort law, and thus that those claims lacked merit, it found that it need not address FEMA's argument that the NFIA preempts state-law claims. *Id.* at 168 n. 6.

The Honorable Joseph H. Rodriguez in the District of New Jersey, however, addressed the very question which the Third Circuit was able to avoid in *Van Holt:* whether the NFIA preempts state law causes of action against WYO companies regarding the adjustment of claims. *3608 Sounds Ave. Condo. Ass'n v. South Carolina Ins. Co.,* 58 F.Supp.2d 499 (D.N.J. 1999). In *3608 Sounds,* the plaintiffs suffered damage to their insured property

from a flood on the Jersey shore in later January, 1998, and filed a claim against the insurance policy to recover the loss, but their insurer refused to cover the loss. *Id.* at 500. The plaintiffs sued to recover under the policy the $26,600 they incurred in damages, as well as for punitive damages, interest, costs, and attorneys fees under New Jersey tort law. *Id.* Relying on the Fifth Circuit's decision in *West,* Judge Rodriguez stated that it is "well established that plaintiffs who assert flood insurance claims cannot recover penalties and attorney's fees because federal law preempts such state law claims.... Similarly, this Court has found no case brought under the NFIA in which attorney's fees were awarded pursuant to common law." *Id.* at 502.

Judge Rodriguez specifically recognized that "New Jersey common law requires the parties to an insurance contract to act in good faith," *id.* at 502–03, and that punitive damages ordinarily act to deter "insurance companies from arbitrarily denying legitimate claims in order to be unjustly enriched." *Id.* at 502. He found, however, that these state remedies were unavailable in claims brought against WYO companies for claims and claims handling for several reasons. First, he noted, "[i]n the flood insurance arena ..., private insurance companies do not have a pecuniary incentive to deny a claim under a policy issued pursuant to the NFIA because all claims are paid by the federal government." *Id.* Second, Judge Rodriguez commented, allowing punitive damages against WYO companies based on claims and claims adjustment would defeat the philosophy of the NFIA program, which is to encourage private insurers to be willing to provide costly flood insurance at all. *Id.* Finally, Judge Rodriguez noted that no provision of federal law allows recovery for punitive damages, attorney's fees, or other damages for a violation of a duty of good faith, and thus the plaintiffs' claims for such damages and bad faith could not proceed. *Id.* at 503.

The Fifth Circuit, as well as numerous courts within the Fifth, Ninth, and Eleventh Circuits have also agreed that federal common and statutory law specifically preempt state principles of contract law for purposes of the interpretations of policies issued pursuant to the NFIA. *See Hanover Bldg. Materials, Inc. v. Guiffrida,* 748 F.2d 1011, 1013 (5th Cir.1984) (disallowing claim for attorney's fees in suit against FEMA); *West,* 573 F.2d 873 (disallowing punitive damages and attorney's fees based on refusal to pay a claim); *Mason v. Witt,* 74 F.Supp.2d 955, 963 (E.D.Cal.1999) (language of § 4053 shows Congress' clear intent that no state claims apply to WYOs); *House v. Bankers Ins. Co.,* 43 F.Supp.2d 1329, 1332 (M.D.Fla. 1999); *Stapleton v. State Farm Fire & Cas. Co.,* 11 F.Supp.2d 1344, 1347 (M.D.Fla.1998) (state common law remedies are preempted in suit against WYO company); *Durkin v. State Farm Mut. Ins. Co.,* 3 F.Supp.2d 724, 729 (E.D.La. 1997); *Friedman v. South Carolina Ins. Co.,* 855 F.Supp. 348, 350–51 (M.D.Fla. 1994) (disallowing state claim for attorney's fees for bad faith failure to pay a claim for emotional distress); *Bains v. Hartford Fire Ins. Co.,* 440 F.Supp. 15, 16 (N.D.Ga.1977) (disallowing claims for penalties and attorney's fees). As the NFIA does not allow for attorney's fees recovery, or for punitive damages, *see Eddins v. Omega Ins. Co.,* 825 F.Supp. 752 (N.D.Miss.1993), these courts held that they are not recoverable in claims against WYO companies.

Plaintiff contends that numerous other cases support its argument that state law-based attorney's fees, punitive damages, and other damages claims are recoverable against a WYO insurer for wrongful conduct in handling a flood insurance policy. *See Spence v. Omaha Indemn. Ins. Co.,* 996 F.2d 793 (5th Cir.1993) (state law misrepresentation claim not preempted); *Cohen v. State Farm Fire and Cas.,* 68 F.Supp.2d 1151 (C.D.Cal.1999) (state law torts claim based on claims handling not

preempted); *Stanton v. State Farm Fire & Cas.*, Civ. No. 99–1033, 1999 WL 1289137 (D.S.D. Dec.27, 1997) (state law claims not preempted); *Murray v. Omaha Prop. & Cas. Ins. Co.*, 1997 U.S. Dist. LEXIS 12843, —— F.Supp.2d —— (S.D.Ala. Feb. 27, 1997); *Lakewood Apartments Assoc. v. Proctor Homer Warren, Inc.*, Civ. No. 95–4285, 1996 WL 227837 (E.D.La. May 3, 1996) (same); *Conrad v. Omaha Prop. & Cas. Ins. Co.*, Civ. No. 94–4087, 1995 WL 350418 (E.D.Pa. June 7, 1995) (same); *Zumbrun v. United Services Auto. Ass'n*, 719 F.Supp. 890 (E.D.Cal. 1989) (state law covers relationship between insurer and insured, though federal law governs interpretation of the SFIP itself). Each of the cases which plaintiff cites, however, is distinguishable.

The *Spence* case did hold that certain state tort claims against WYO insurers were not preempted by the NFIA, basing its ruling upon changes in the NFIA that allegedly "make it clear that Congress and FEMA (in adopting implementing regulations) contemplated state-based tort claims being brought against WYOs." *Cohen v. State Farm Fire and Casualty*, 68 F.Supp.2d 1151 (C.D.Cal.1999) (following *Spence*, 996 F.2d at 793). These changes include provisions in regulations such as 44 C.F.R. Pt. 62, App. A, Art. III, §§ D(2), (C), and (E), which do not permit withdrawal of money from the Federal Treasury to cover a WYO's liability for judgments on tort claims against the WYO itself. *Spence*, 996 F.2d at 797 n. 17. The *Cohen* court pointed out that because there was no provision in the NFIA itself that would punish insurers for errors or omissions, and because FEMA's regulations do not allow FEMA to pay WYOs' litigation costs incurred for conduct taken "outside of the scope of the WYO FEMA relationship," Congress must have intended for state tort law to govern that conduct. *Cohen*, 68 F.Supp.2d 1151, 1157 (citing 44 C.F.R. Pt. 62, App. A, Art. III(4)).

If *Spence* stood for the proposition that the NFIA does not preempt state tort claims, then *West* and *Spence* could not simultaneously be good law. However, *Spence* did not overrule *West*; it hardly even mentioned *West*, a case issued by the same court of appeals. In fact, *Spence* dealt with an entirely different subject matter than the type of state tort claims involved in *West*, in *3608 Sounds*, and in the instant case. *West* and *3608 Sounds* involved, in addition to breach of contract claims for failure to pay a claim in part or in full, state tort or statutory claims for attorney's fees, punitive damages, and other damages based on bad faith handling of the claim. Those cases held that the NFIA preempts state law-based, extracontractual claims based on the claims or the claims handling. The *Spence* case, on the other hand, involved both a claim for breach of contract and a fraudulent policy procurement claim brought against an insurance agent and a claims adjuster. 996 F.2d at 794. The plaintiffs in *Spence* alleged that the agent and the adjuster "both made misrepresentations to the [plaintiffs] concerning the scope of their insurance coverage upon which the [plaintiffs] justifiably relied" in deciding to obtain flood insurance in the first place. *Id.*

Policy procurement is an entirely different creature than claims handling. NFIA regulations provide that FEMA will reimburse WYO insurers for the claims and the claims handling, as well as for the costs of defending a lawsuit based on claims handling, and there is thus no incentive for the WYO insurer to deny a claim in part or in full—the more claims the WYO insurer agrees to pay, the more money it will receive from the U.S. Treasury. On the other hand, the WYO insurers may have the incentive to make fraudulent misrepresentations when trying to get potential customers to sign up for flood insurance in the first place. The *Spence* court was correct that FEMA regulations indicate that the WYO insurance companies do not act as general agents for the federal government and that FEMA intended to "leave those insurers responsible for their

own tortious conduct." *Id.* at 797. The tortious conduct about which the Fifth Circuit was concerned in *Spence* was fraud in policy procurement, not claims handling. Therefore, the *Spence* case does not change this Court's inclination to follow the reasoning of the Fifth Circuit in *West,* of Judge Rodriguez in *3608 Sounds,* and of a host of other courts in the Fifth, Ninth, and Eleventh Circuits.

The *Cohen* case, unlike the *Spence* decision, did squarely hold the NFIA does not preempt state law claims regarding coverage issues. *Cohen,* 68 F.Supp.2d at 1157–58. However, *Cohen* does not constitute persuasive precedent for two reasons. First, *Cohen* is largely based on the Central District of California's belief that *Spence* held that the NFIA does not preempt state law claims in general, *id.,* which *Spence* did not do. Second, *Cohen* was also based in the Eastern District of California's decision in *Zumbrun,* 719 F.Supp. 890. *See Cohen,* 68 F.Supp.2d at 1155. The *Zumbrun* decision, which plaintiffs have also cited in support of their argument, has no precedential value even in California. *Waller v. Truck Ins. Exchange,* 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995), *discussed in Etchell v. Royal Ins. Co.,* 165 F.R.D. 523 (N.D.Cal. 1996) (noting that the California Supreme Court's decision in *Waller* "limits dramatically the precedential viability (outside of their peculiar factual settings) of . . . *Zumbrun* ( . . . which involved federal courts trying to ascertain what pertinent California law was).". Therefore, this Court declines to follow *Cohen* and *Zumbrun.*

*Stanton, Murray, Lakewood,* and *Conrad* are also distinguishable. *Conrad,* 1995 WL 350418, at *3, was rooted in part in the Eastern District of Pennsylvania's belief that "[t]he WYO company and not the government is the real party in interest," *id.,* a statement that is directly contradicted by the Third Circuit's holding, three years later, in *Van Holt,* 163 F.3d 161, that a suit against a WYO carrier is the functional equivalent of a suit against FEMA because FEMA pays all allowable claims. *Conrad* was also heavily premised on *Zumbrun.* *Conrad,* 1995 WL 350418, at *3.

*Lakewood,* like *Spence,* is a policy procurement case, holding that the NFIA did not preempt state law claims against an insurance agent for negligent failure to procure adequate insurance coverage. 1996 WL 227837, at *3. *Murray,* 1997 U.S. Dist. LEXIS 12843, —— F.Supp.2d —— was repudiated by the judge who issued it, who held in a response to a Motion for Reconsideration, that he had no authority to entertain reconsideration of his remand order, but that he would stay, reconsider, and rescind it if he could. *Murray v. Omaha Property & Casualty Insurance Company,* Civil No. 96–0573–RV–S, Notice to Parties (S.D.Ala. March 20, 1997), in Def.'s Reply Br. Ex. B. Finally, *Stanton* relied on *Spence* (believing that *Spence* held that the NFIA does not preempt any kind of state law claim) and on *Cohen, Stanton,* 78 F.Supp.2d 1029, 1035, two decisions which this Court has declined to follow.

### 3. *Decision*

■ None of the cases which plaintiffs have cited sway this Court's belief that Judge Rodriguez correctly determined this issue in *3608 Sounds.* While it makes sense to hold WYO insurers liable when they engage in fraudulent behavior designed to procure customers to get flood insurance through them—instead of through other insurers or not at all—WYO insurers simply have no financial incentive to act in bad faith in handling claims. If WYO insurers were to be held liable under different states' differing laws for their behavior during the claims handling process, it would make it much less likely that private insurers would be willing to participate in the NFIP, making flood insurance impossible to obtain at all, and increasing the burden on the federal treasury from flood-related disaster relief. That is pre-

cisely the situation that the NFIP was designed to remedy.

Plaintiffs' claims against defendant in this case are nothing more than a disagreement with defendant's decision to pay less on the claim than plaintiffs believe is warranted. Plaintiffs may still pursue that claim through their breach of contract action based on the SFIP itself. However, plaintiffs are not entitled to receive compensatory, punitive, or consequential damages, or attorney's fees, for alleged bad faith during the National Flood Insurance Program claims handling process, because federal law does not provide for those remedies in this type of case.

III. *Conclusion*

For the foregoing reasons, this Court will grant defendant's motion to dismiss all state law-based, extra-contractual claims for damages, punitive damages, consequential and incidental damages, and attorney's fees based on malicious behavior and a violation of a duty to act in good faith. Plaintiffs may proceed on their claim for breach of contract alone.

**ORDER**

This matter having come before the court upon defendant's motion to dismiss all state law-based, extra-contractual claims in the Complaint; and this Court having considered the parties' submissions; and for the reasons expressed in an Opinion of today's date;

IT IS this *8th* day of March, 2000 hereby

ORDERED that defendant's motion to dismiss all state law-based, extra-contractual claims in the Complaint be, and hereby is, *GRANTED*.