Re VAN HOLT, Jo Van Holt, Appellants,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Liberty Mutual Group.

No. 97–5098.

United States Court of Appeals, Third Circuit.

Nov. 24, 1998.

Present: SLOVITER, LEWIS, and ROSENN, Circuit Judges.

**ORDER**

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Liberty Mutual Group.

No. 97–5098.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 23, 1998.

Original Opinion Filed May 11, 1998.

Rehearing Granted July 21, 1998.

Opinion and Judgment Vacated Nov. 24, 1998.

Decided Nov. 25, 1998.

will affirm the district court's grant of summary judgment.

James F. Villere, Jr., Morristown, NJ, for Appellant.

Eli L. Eytan, Law Offices of Mauro C. Casci, Leonardo, NJ, for Appellee.

Marc Richman, Civil Div., Dept. of Justice, Washington, DC, for Amicus Curiae.

Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for Amicus Curiae.

BEFORE: SLOVITER, LEWIS, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents an important question of jurisdiction arising out of the interface between state consumer legislation and the enactment of the National Flood Insurance Act as well as issues relating to liability pertaining to National Flood Insurance policies. The threshold issue is whether the federal courts have subject-matter jurisdiction over a complaint by an insured predicated on the National Flood Insurance Act of 1968 ("NFIA" or "the Act") but actually sounding in tort.

The plaintiffs' complaint alleges that Liberty Mutual Fire Insurance Company and Liberty Mutual Group ("Liberty Mutual"), a private insurer acting as a fiscal agent of the federal government, violated New Jersey state law during its investigation and adjustment of a claim under a policy issued by it pursuant to the NFIA. The plaintiffs assert exclusive federal jurisdiction under the NFIA. The district court entered summary judgment for the defendants on the plaintiffs' claim for damages. On appeal, we initially held that the district court did not have subject-matter jurisdiction. We subsequently granted panel rehearing and vacated the opinion and judgment. In light of new information furnished on the petition for rehearing, we now hold that the district court had subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4072. We have reviewed the plaintiffs' claims for damages and

## I.

The plaintiffs, Re and Jo Van Holt, own a home in Sea Bright, New Jersey. The town of Sea Bright is located on a narrow strip of land bounded by the Shrewsbury River on one side and the Atlantic Ocean on the other. The Van Holts' home is located in an area that floods frequently. In October 1991, Sea Bright was flooded, resulting in damage to the Van Holts' home and personal property. In connection with this flood, the Van Holts filed two claims with their insurer, Liberty Mutual. Liberty Mutual paid the claims by check in the Summer of 1992. The Van Holts received and cashed Liberty Mutual's checks without objection. On December 11, 1992, the Van Holts' home and personal property were again damaged by flooding that resulted from high winds and rain. The present dispute between the Van Holts and Liberty Mutual primarily centers on the damage caused by the December 1992 flood.

The Van Holts held two insurance policies issued by Liberty Mutual. The first was a homeowner's policy, and the other was a flood insurance policy issued pursuant to the National Flood Insurance Program ("NFIP"). *See* 42 U.S.C. §§ 4001–4129 (codification of the NFIA). The Van Holts made claims on both policies for the damages resulting from the December 1992 flood. The claims made under the homeowner's policy do not affect the result in this case, and we do not discuss them. The Van Holts hired their own claims adjuster, Robert C. Ascher. Following an inspection of the Van Holts' home and property, Ascher submitted a list of the damaged property to Kevin Grelle, Liberty Mutual's claims adjuster. On behalf of Liberty Mutual, Grelle refused to approve the claimed damages because the plaintiffs failed to submit a properly sworn proof of loss as required by the standard flood insurance policy. According to a letter from Grelle to Ascher dated June 7, 1993, Grelle rejected Ascher's list because it did not set forth the values of the items claimed and the Van Holts had not signed each page as the insurance policies required.

When six months passed without payment of their claims, in June 1993, the Van Holts, through Ascher, filed a complaint against Liberty Mutual with the New Jersey Department of Insurance. The department forwarded the complaint to Liberty Mutual and requested Liberty Mutual's reasons for taking so long to evaluate the claim. In response, Grelle stated that he believed that the Van Holts had attempted to defraud Liberty Mutual by inflating the extent of their damages and claiming damage to property that had been destroyed or damaged, not in the December 1992 flood, but in the earlier October 1991 flood. In his investigation report, Grelle stated that, among other things, the Van Holts made claims for damage to property stored in the basement of their home that was caused by the October 1991 flood. Liberty Mutual had denied coverage for this damage when it partially paid the October 1991 claim because the flood insurance policy excluded coverage for damage to property stored in the insured's basement. After additional investigation, including an under-oath examination of the Van Holts by Liberty Mutual's attorneys, on June 16, 1995, Liberty Mutual formally denied the Van Holts' claims on the ground that they were fraudulent.

On December 15, 1995, the Van Holts sued Liberty Mutual in the United States District Court for the District of New Jersey. In their complaint, the Van Holts alleged that Liberty Mutual committed two state-law torts and asserted subject-matter jurisdiction pursuant to 42 U.S.C. § 4053, a provision of the NFIA.[1] They cited no other statutory provision. Specifically, the plaintiffs averred that Liberty Mutual's failure to pay their claims and the company's allegation that the claims were fraudulent violated the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8–1

to 56:8–48, and New Jersey common law requiring parties to an insurance contract to act in good faith, see *Pickett v. Lloyd's,* 131 N.J. 457, 621 A.2d 445, 451–52 (N.J.1993) (describing insurer's duty of good faith); *see also Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 690 A.2d 575, 587 (N.J.1997) (discussing duty of good faith in other contractual contexts). Following discovery, the district court entered summary judgment for Liberty Mutual.

The court held that the plaintiffs could not state a Consumer Fraud Act claim because they had failed to present evidence of fraud by Liberty Mutual and because an alleged violation of the Unfair Claims Act did not constitute a violation of the Consumer Fraud Act. The court granted summary judgment for Liberty Mutual on the Van Holts' bad faith claim because the plaintiffs failed to demonstrate that the denial of the insurance claim was not supported by Liberty Mutual's reasonable belief that the plaintiffs were not entitled to benefits. Lastly, the court rejected the plaintiffs' claim for punitive damages because they failed to present evidence of egregious or malicious conduct by Liberty Mutual. The Van Holts filed a timely notice of appeal.

Believing that the Federal Emergency Management Agency ("FEMA") was merely a guarantor of the plaintiffs' flood insurance claims and that Liberty Mutual was not an agent of the federal government, we initially vacated the district court's December 2, 1996 judgment and remanded this case with instructions to dismiss for lack of subject-matter jurisdiction. Liberty Mutual thereafter petitioned for rehearing. In support of the petition, Liberty Mutual and amicus curiae United States informed us, for the first time, that Liberty Mutual was a fiscal agent for the federal government and that the federal

1. 42 U.S.C. § 4053 provides:

The insurance companies and other insurers which form, associate, or otherwise join together in the pool under this part may adjust and pay all claims for proved and approved losses covered by flood insurance in accordance with the provisions of this chapter and, upon the disallowance by any such company or other insurer of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant,

within one year after the date of mailing of notice of disallowance or partial disallowance of the claim, may institute an action on such claim against such company or other insurer in the United States district court for the district in which the insured property or major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

government received premiums and disbursed claims under the defendants' flood insurance policy.

## II.

### A.

It is undisputed that Liberty Mutual issued the flood insurance policy to the Van Holts pursuant to the NFIP. The NFIP is a federally supervised and guaranteed insurance program presently administered by the Federal Emergency Management Agency ("FEMA") pursuant to the NFIA and its corresponding regulations. *See* 44 C .F.R. §§ 59.1–77.2. Congress created the program, among other things, to limit the damage caused by flood disasters through prevention and protective measures, spread the risk of flood damage among many private insurers and the federal government, and make flood insurance "available on reasonable terms and conditions" to those in need of it.[2] *See* 42 U.S.C. § 4001(a).

Initially, under what is referred to as Part A of the NFIA, a pool of private insurance companies issued flood insurance policies and administered the NFIP pursuant to a contract with the United States Department of Housing and Urban Development. *See* 42 U.S.C. §§ 4051–53; *see generally Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 794 n. 1 (5th Cir.1993) (discussing initial workings and organization of program under the Act); *Berger v. Pierce*, 933 F.2d 393, 394–96 (6th Cir.1991) (same). Under Part A, if a pool company refused to pay a claim under a flood insurance policy, the insured was permitted to sue the pool insurance company "on [the] claim" in federal district court regardless of the amount in controversy. *See* 42 U.S.C. § 4053.

On January 1, 1978, pursuant to 42 U.S.C. § 4071, HUD, although retaining the assistance of the private insurance industry, ended its contractual relationship with the pool of private insurers and assumed greater responsibility for operating the NFIP. *See generally In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir.1987) (discussing HUD takeover of NFIP). Under this arrangement, which is presently in force and designated Part B, FEMA began administering the NFIP through the Flood Insurance Administration.

In 1983, pursuant to regulatory authority granted by Congress in 42 U.S.C. § 4081(a), FEMA created the "Write Your Own" ("WYO") program. *See* 44 C.F.R. §§ 62.23–.24. Under this program, private insurance companies like Liberty Mutual write their own insurance policies. 44 C.F.R. § 62.23. The WYO companies must then remit the insurance premiums to the Flood Insurance Administration ("FIA"); however, the companies may keep funds required to meet current expenditures, which are limited to five thousand dollars. *See* 44 C.F.R. Pt. 62, App. A., Art. VII(B). When WYO companies deplete their net premium income, a phenomenon that occurs regularly because the companies must forfeit a significant portion of the proceeds from premiums, they draw money from FEMA through letters of credit to disburse claims. *See* 44 C.F.R. Pt. 62, App. A, Art. IV(A). Thus, regardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims. *See Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998); *Spence*, 996 F.2d at 795 n. 12; *In re Estate of Lee*, 812 F.2d at 256.

Although WYO companies have the responsibility of defending against claims, FEMA reimburses the WYO companies for their defense costs. 44 C.F.R. § 62.23(i)(6). WYO companies are fiscal agents of the United States. 42 U.S.C. § 4071(a)(1) (authorizing FEMA director to utilize insurance companies as "fiscal agents of the United States"); *see also Gowland*, 143 F.3d at 953. However, WYO companies are not general agents of the federal government. *See* 44 C.F.R. § 62.63(g). FEMA fixes the terms and conditions of the flood insurance policies, which, barring the express written consent of

---

2. Because it is uneconomical to provide flood insurance with reasonable terms and conditions for those in flood-prone areas, "Congress established the National Flood Insurance Program to provide insurance coverage at or below actuarial rates. The program is currently operated by the Federal Emergency Management Agency (FEMA) and actually is supported by the Federal treasury." *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir.1998).

the Federal Insurance Administrator, must be issued without alteration as a Standard Flood Insurance Policy ("SFIP"). 44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c), 62.23(d); *see also Gowland*, 143 F.3d at 953.

### B.

■ Before the district court, the parties did not raise any question whether the district court had subject-matter jurisdiction of the Van Holts' complaint, and the court did not consider the matter. In their complaint and initial appellate brief, the plaintiffs declared that 42 U.S.C. § 4053 provided subject-matter jurisdiction and Liberty Mutual did not challenge the court's jurisdiction. In accordance with our duty to raise subject-matter jurisdiction, on March 28, 1998, we requested counsel for the parties to submit supplemental briefs on the issue of jurisdiction. In their supplemental briefs, both parties argued that 42 U.S.C. § 4053 bestowed subject-matter jurisdiction upon the district court. We initially held that § 4053 permitted lawsuits against WYO companies only for coverage claims. In its amicus brief supporting rehearing, the United States argues that the statute applies only for Part A programs, which have been discontinued, and is inapplicable to this case, which arose out of an insurance policy issued under a Part B program. We agree that 42 U.S.C. § 4053 only pertains to disputes over policies issued under a Part A program. *See Siekmann v. Kirk Mortgage Co.*, 548 F.Supp. 50, 51 n. 4 (E.D.Pa.1982); *see also Spence*, 996 F.2d at 795 n. 12 (noting present flood insurance scheme does not use § 4053 insurance pools). Consequently, § 4053 did not confer subject-matter jurisdiction on the district court.

■ 42 U.S.C. § 4072 grants the district court exclusive subject-matter jurisdiction in cases arising out of claims issued pursuant to Part B.[3] The statute provides that an insured may sue FEMA if it adjusts a claim and improperly refuses to pay benefits. *See* 42 U.S.C. § 4072. When a court interprets a statute, the inquiry must begin with the plain language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *United States v. Schneider*, 14 F.3d 876, 879 (3d Cir.1994). The court, however, must look not only to the particular statutory language, but to the design of the statute as a whole and its objectives and policies. *See Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990); *Schneider*, 14 F.3d at 879.

■ As the United States argues, § 4072 provides subject-matter jurisdiction for an insured's suits against a WYO arising out of a disputed flood insurance claim though the plain text appears to restrict the reach of § 4072 to suits against FEMA. For several reasons, a suit against a WYO company is the functional equivalent of a suit against FEMA. First, a WYO company is a fiscal agent of the United States. 42 U.S.C. § 4071(a)(1). Second, FEMA regulations require a WYO company to defend claims but assure that FEMA will reimburse the WYO company for defense costs. 44 C.F.R. § 62.23(i)(6). Third, an insured's flood insurance claims are ultimately paid by FEMA. After a WYO company depletes its net premium income, FEMA reimburses the company for the company's claims payments. 44 C.F.R. Pt. 62, App. A, Art. IV(A). When a WYO company's proceeds from insurance premiums exceeds its current expenditures, it must pay the excess proceeds to the FIA. 44 C.F.R. Pt. 62, App. A., Art. VII(B). Although a WYO company collects premiums and disburses claims, only FEMA bears the risk under the flood insurance program.

---

**3.** Section 4072 provides:

In the event the program is carried out as provided in section 4071 of this title, the Director shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

Thus, a lawsuit against a WYO company is, in reality, a suit against FEMA. *Cf. Gowland,* 143 F.3d at 954–55 (refusing to estop WYO company due to relationship between company and FEMA).

Furthermore, construing 42 U.S.C. § 4072 narrowly to confer jurisdiction only to cases formally against FEMA would cause anomalous results. Such construction would provide original exclusive jurisdiction to suits formally against FEMA but not to suits against WYO companies for which FEMA would be responsible for reimbursing defense costs and judgments. Because FEMA bears the risk and financial responsibility regardless of whether the lawsuit formally names FEMA or a WYO company as the defendant, it would make little sense for Congress to have intended to create original exclusive jurisdiction for suits against FEMA but not for suits in which FEMA's fiscal agent is the nominal defendant. Therefore, we now hold that 42 U.S.C. § 4072 vests district courts with original exclusive jurisdiction over suits by claimants against WYO companies based on partial or total disallowance of claims for insurance arising out of the National Flood Insurance Act.

■ Consequently, we conclude that the district court had jurisdiction under § 4072 over the plaintiffs' suit alleging that Liberty Mutual violated the New Jersey Consumer Fraud Act and acted in bad faith. Although the Van Holts' suit does not explicitly allege that Liberty Mutual violated the insurance policy contract, their lawsuit should be deemed an action subject to the Act. The statutory and regulatory scheme reveals that Congress would have intended to give the district court original exclusive jurisdiction had Congress considered the issue. Most importantly, federal funds are at stake in this suit. Congress would want federal courts to adjudicate disputes over federal flood insurance policies for which the federal government would be responsible for reimbursing the WYO company if the claimant prevails. Although the Van Holts' claims sound in tort, their causes of action alleging impropriety in the investigation and adjustment of their insurance claim are intimately related to the disallowance of their insurance claim. De-

spite our initial conclusion that the NFIA's policies and regulations did not evince a Congressional intent to provide original exclusive jurisdiction of state-law torts arising out of flood insurance policies, the briefs we received in connection with the petition of rehearing have enhanced our understanding of the flood insurance program. We now determine that Congress, had it considered the specific question, would have intended to confer original exclusive jurisdiction on the district court over claims sounding in tort arising out of the investigation or adjustment of insurance policies arising out of the administration and sale of insurance under the NFIA. We reach this conclusion because Liberty Mutual is a fiscal agent of the United States, FEMA would have borne the costs of the plaintiffs' insurance claim, and FEMA is obliged to reimburse Liberty Mutual for defense costs.

In sum, we hold that 42 U.S.C. § 4072 vested the district court with subject-matter jurisdiction over the plaintiffs' lawsuit. Likewise, we conclude that the court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. Although the plaintiffs mistakenly claimed that jurisdiction was founded in 42 U.S.C. § 4053, the existence of subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 4072 permits us to reach the merits of this appeal.

### III.

Our review of the district court's grant of summary judgment for Liberty Mutual is plenary. *See, e.g., Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302 (3d Cir.1998). Thus, we must determine whether, after drawing all justifiable inferences in the Van Holts' favor, there is no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The plaintiffs' complaint raises two claims: that Liberty Mutual violated the New Jersey Consumer Fraud Act and that Liberty Mutual breached the implied covenant of good faith and fair dealing. We consider each cause of action in turn.

■ The Van Holts allege that Liberty Mutual committed unconscionable commercial practices in violation of the Consumer Fraud Act.[4] An unconscionable commercial practice necessarily entails a lack of good faith, fair dealing, and honesty. *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454, 462 (N.J.1994). "The capacity to mislead is the prime ingredient of all types of consumer fraud." *Id.* Mere customer dissatisfaction does not constitute consumer fraud. *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 139 N.J. 392, 655 A.2d 417, 430 (N.J. 1995).

■ In their complaint, the Van Holts allege that Liberty Mutual committed an unconscionable commercial practice by failing to address their damage claims promptly and ultimately denying the claim. The record is devoid of evidence that Liberty Mutual committed fraud, made misrepresentations, or misled the Van Holts. The mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice. Even if, as the Van Holts argue, Liberty Mutual violated regulations promulgated under the New Jersey Unfair Claims Act, the alleged violations do not constitute fraudulent or misleading commercial practices. Moreover, New.Jersey courts that have decided the issue have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act. *See, e.g., Nikiper v. Motor Club of Am.,* 232 N.J.Super. 393, 557 A.2d 332, 336 (N.J.Super.Ct.App.Div.1989).[5] Therefore, the district court properly granted Liberty Mutual's motion for summary judgment with respect to this cause of action.

■ The Van Holts also claim that Liberty Mutual breached the insurance contract's implied covenant of good faith and fair deal-

ing. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder,* 690 A.2d at 587; *see also Pickett,* 621 A.2d at 450 (insurance contract). The New Jersey Supreme Court has defined the contours of a claim for a bad faith denial of insurance benefits as follows: "If a claim is fairly debatable, no liability in tort will arise.... To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Pickett,* 621 A.2d at 453 (internal quotations omitted). Thus, the plaintiffs cannot survive summary judgment by merely presenting evidence that their insurance claim was not fraudulent. Rather, they must establish that Liberty Mutual had no reasonable basis for denying their claim.

■ Liberty Mutual denied the plaintiffs' claim because it was allegedly fraudulent. Liberty Mutual's adjuster, Kevin Grelle, concluded that some items in the Van Holts' claim had been claimed in a previous flood and that their claimed loss was substantially overstated. The SFIP permitted Liberty Mutual to void the Van Holts' flood insurance policy upon the filing of a fraudulent claim. 44 C.F .R. Pt. 61, App. A(1), Art 9(F)(d). Despite denying that they submitted a fraudulent claim, the plaintiffs have not demonstrated that Liberty Mutual lacked a reasonable basis for disallowing their flood insurance claims. When the evidence is viewed in the light most favorable to the Van Holts, it is at least fairly debatable that the Van Holts intentionally misrepresented the extent of their claimed losses, enabling Liberty Mutual to deny the insurance claim entirely. In fact, in their motion for reargument before the district court, the plaintiffs conceded that Liberty Mutual's allegations of

4. The Consumer Fraud Act provides:
   The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subse-

quent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
N.J.S.A. § 56:8–2.

5. The New Jersey Supreme Court has declined to decide this issue. *See Rodio v. Smith,* 123 N.J. 345, 587 A.2d 621, 624 (N.J.1991).

inflated insurance claims were debatable. Accordingly, the district court properly granted summary judgment for Liberty Mutual on the Van Holts' bad faith claim.

Because the Van Holts have not presented sufficient probative evidence for a reasonable jury to return a favorable verdict on either of their causes of action, the district court committed no error in granting Liberty Mutual's motion for summary judgment as a matter of law.[6]

## IV.

In conclusion, we hold that the district court had subject-matter jurisdiction of this lawsuit under 28 U.S.C. § 1331 and 42 U.S.C. § 4072 and did not err in granting summary judgment for Liberty Mutual. Accordingly, the judgment of the district court will be affirmed. Costs taxed against the appellants.

6. The United States, stressing the need for nationwide uniformity in the law, asserts that the NFIA preempts the Van Holts' state law claims. Because we hold that the plaintiffs' state-law claims lack merit and that Liberty Mutual is entitled to summary judgment as a matter of law, we need not decide whether the NFIA preempts the state-law claims.