Dolores M. NEILL and
Kenneth Hutton,

v.

STATE FARM FIRE AND CASUALTY
COMPANY.

No. CIV. A. 00–CV–2108.

United States District Court,
E.D. Pennsylvania.

Dec. 1, 2000.

David E. Schreiber, Mayerson Law Offices, Spring City, for Dolores M. Neill, Kenneth H. Hutton, Plaintiffs.

Bonnie S. Stein, Curtin & Heefner, Morrisville, Gerald J. Nielsen, Nielsen Law Firm, Metairie, LA, for State Farm Mutual Automobile Insurance Company a/k/a State Farm Fire and Casualty Company a/k/a State Farm Life and Accident Assurance Company a/k/a State Farm General Insurance Company a/k/a State Farm Indemnity Company a/k/a State Farm Insurance Company, Defendants.

## Opinion

McLAUGHLIN, District Judge.

In a dispute regarding the application of state law to Standard Flood Insurance Policies (SFIPs) issued under the National Flood Insurance Act (NFIA), 42 U.S.C. 4001–4129, I hold that all extra-contractual state-law causes of action related to the handling of claims under NFIA are preempted by federal law. The plaintiffs' residence and belongings suffered severe damage as a result of flooding due to Hurricane Floyd. The plaintiffs were holders of a SFIP issued by State Farm Fire and Casualty Company pursuant to NFIA. Plaintiffs have sued State Farm for (1) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S. § 201–1 et seq., (2) bad faith under 42 Pa.C.S. § 8371, and (3) breach of contract. Currently before the Court is the defendant's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Counts 1 and 2 on the ground that those claims are preempted by federal law. I will grant the defendant's motion.

### I. Background

The residence and belongings of plaintiffs Neill and Hutton, holders of a SFIP issued by State Farm, suffered severe damage from flooding on September 16, 1999. On September 17, 1999, the plaintiffs notified State Farm of their claims arising out of the flood. A representative of State Farm inspected the damage to the residence on September 22, 1999. State Farm issued a $5000 check to plaintiffs on October 24, 1999. State Farm issued varying appraisals on October 10, 1999, November 11, 1999, and November 26, 1999. On October 26, 1999, plaintiffs hired ABC Public Adjusters to prosecute the claim. On December 9, 1999, plaintiffs requested that State Farm pay the undisputed portion of the flood claim and also submitted a Partial Proof of Loss form. According to the plaintiffs' complaint, State Farm first tendered a payment beyond the $5000 advance on February 24, 2000. Plaintiffs allege that State Farm's appraisals and its eventual payment were unreasonably low and came after unreasonable delay.

On March 27, 2000, plaintiffs filed a law suit against State Farm in the Delaware County Court of Common Pleas alleging that State Farm's claims handling procedures violated state law and constituted a breach of contract. State Farm removed to federal court on April 24, 2000 and filed a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss, arguing that plaintiffs' extra-contractual state-law claims are preempted by NFIA under a theory of field preemption and/or conflict preemption. Because State Farm had already answered plaintiffs' complaint, it orally amended the motion to rely on Fed. R. Civ. Pro. 12(c).

### II. Standards for a Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Jubilee v. Horn*, 975 F.Supp. 761, 763

(E.D.Pa.1997), *aff'd*, 151 F.3d 1025 (3d Cir. 1998). The court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them. The claims in question should only be dismissed if no relief could be granted under any set of facts which could be proved. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988)).

### III. *The National Flood Insurance Program: Structure and Purpose*

The National Flood Insurance Program (NFIP) is a federally subsidized flood insurance program, created in 1968 and currently administered by the Federal Emergency Management Agency (FEMA). 42 U.S.C. § 4001–4129. The flood insurance policies issued under NFIA are called Standard Flood Insurance Policies (SFIPs). In 1983, FEMA promulgated regulations that enabled the agency to use private insurers, called Write–Your–Own insurance companies (WYOs), as intermediaries in providing flood insurance. 44 C.F.R § 61.13(f). As of 1998, over 90% of SFIPs were issued by WYOs, with the remainder issued by FEMA. *See* Brief for the United States as Amicus Curiae, at 8, *Van Holt v. Liberty Mutual*, 163 F.3d 161 (3d Cir.1998). WYOs may not alter, vary, or waive the terms of the Standard Flood Insurance Policies (SFIPs), as promulgated by FEMA. 44 C.F.R. § 61.4(b); 44 C.F.R. § 61.13(d); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir.1998).

■ The U.S. government bears the ultimate responsibility for financing all SFIPs. According to the NFIP regulations, WYOs hold SFIP premiums in separate accounts and also make their payments out of these accounts. 44 C.F.R. Pt. 62, App. A, art. II. A WYO with insufficient funds to make SFIP payments must draw on FEMA letters of credit to cover the necessary payments. 44 C.F.R. Pt. 62, App. A, art. IV. WYOs receive commissions on every payment they make under the SFIP. This relationship between the government and the WYOs was summarized by the Third Circuit as follows: "Thus, regardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims." *Van Holt v. Liberty Mutual Fire Insurance*, 163 F.3d 161, 165 (3d Cir.1998).

■ The National Flood Insurance Program was developed in order to enable the federal government to reduce the public and private costs of flood relief efforts by establishing a national program of flood insurance combined with land-use measures:

> Congress finds that … from time to time flood disasters have created personal hardships and economic distress which have required unforeseen disaster relief measures and have placed an increasing burden on the Nation's resources; … as a matter of national policy, a reasonable method of sharing the risk of flood losses is through a program of flood insurance which can complement and encourage preventive and protective measures.

42 U.S.C. § 4001.

Congress also explicitly recognized that it would be economically infeasible for private insurance companies to provide flood insurance on their own, but that large-scale federal government participation would support the operation of such a flood insurance program and ensure the availability of reasonably affordable insurance coverage. 42 U.S.C. § 4001. In order to encourage private insurers to provide flood insurance under NFIP, the U.S. government provides a number of incen-

tives: first, the government bears the ultimate responsibility for financing. 44 C.F.R. § 62.23(f); 44 C.F.R. Pt. 62, App. A, arts II(E), IV(A), VII(A). Second, the government provides commissions on all benefit payments made by WYOs. 44 C.F.R. Pt. 62, App. A, art. III(C)(1). In order to be able to use private insurers to implement NFIA while at the same time maintaining control over the provision of flood insurance and the resulting burden on the Treasury, the U.S. government requires all WYOs nation-wide to use SFIPS—uniform policies that cannot be altered by WYOs. 44 C.F.R. § 61.4(b); 44 C.F.R. § 61.13(d). *See also Gowland*, 143 F.3d at 953–955.

FEMA has expressed its views on the purpose and structure of NFIA to several courts. In the U.S. government's amicus brief to the Third Circuit in *Van Holt*, the government stated:

> The United States has a significant interest in how operation of the program is dealt with in the courts, because the terms of the Standard Flood Insurance Policy ("SFIP") are fixed by FEMA regulation on a nationwide basis; because Congress has vested FEMA with the authority to establish the way claims are to be proved, adjusted, and paid; and because the claims investigation and adjustment process is and must be governed by uniform federal law. The United States thus has a compelling interest in assuring that State regulators and State courts do not—directly or indirectly, by construction of policies or scrutinizing the investigation and adjustment of claims, or by threatening to do so—undermine operation of this federal program.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> A federal insurance program is not subject to State law ... There is no role in such cases for State regulators or State courts. The essence of the complaint

here is based on execution of the federal insurance contract, and artful pleading cannot transmogrify this federal contract case into a State tort case. State law is preempted as a matter law and contract.

Brief for the United States as Amicus Curiae, at 8, *Van Holt v. Liberty Mutual*, 163 F.3d 161 (3d Cir.1998). *See also Davis v. Travelers Property and Casualty Co.*, 96 F.Supp.2d 995 (N.D.Cal.2000) (describing government's position in favor of federal preemption of state law under NFIP).

FEMA also published a proposed rule in the Federal Register on May 31, 2000, in which it summarized the goals of NFIP, and proposed "that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal Law." 65 Fed.Reg. 34827–28 (May 31, 2000). On October 12, 2000, FEMA published a "final rule" in the Federal Register, which included the language quoted above and which will become effective on December 31, 2000. 65 Fed.Reg. 60758–01 (Oct. 12, 2000).

## IV. *Preemption: Overview and Case Law*

State law is preempted by federal law in three circumstances. First, the state law is preempted if such preemption is explicitly contemplated by the federal statute in question. *English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Second, the state law is preempted if the statute was intended to "occupy the field", that is, if the statute regulates an area of policy over which Congress intended the federal government to have exclusive control. *Id.* This form of preemption is referred to as field preemption. Third, federal law

preempts state law when the two laws conflict such that it is impossible to comply with both at once or such that the state law conflicts with the goals of the federal statute. *Id.* This third circumstance is generally labeled conflict preemption.

The parties in this case agree that the National Flood Insurance Act does not explicitly preempt extra-contractual state law claims.[1] The defendant argues that NFIA preempts extra-contractual state law claims arising out of claims handling disputes under both field and conflict preemption theories.

The Third Circuit has not directly addressed the issue of federal preemption of state law claims arising out of disputes concerning SFIPs. In *Van Holt*, the Third Circuit held that federal courts have exclusive subject matter jurisdiction over suits against WYOs under NFIA. The court noted that FEMA "was a fiscal agent of the United States and that the federal government received premiums and disbursed claims under the defendants' flood insurance policy." 163 F.3d at 164–65. The court further discussed the federal government's role in the administration and financing of NFIP:

> For several reasons, a suit against a WYO is the functional equivalent of a suit against FEMA. First, a WYO company is a fiscal agent of the United States. 42 U.S.C. § 4071(a)(1). Second, FEMA regulations require a WYO company to defend claims but assure that FEMA will reimburse the WYO company for defense costs. 44 C.F.R. § 62.23(i)(6). Third, an insured's flood insurance claims are ultimately paid by FEMA.... Although a WYO company collects premiums and disburses claims, only FEMA bears the risk under the flood insurance program.

163 F.3d at 166. The court concluded that 42 U.S.C. § 4072, which provides that exclusive, original jurisdiction applies to claims against FEMA, should be held to cover suits against WYOs as well.

The court also acknowledged the argument presented by the U.S. government in its amicus brief that the "need for nationwide uniformity in the law", 163 F.3d at 169 n. 6, requires preemption of state law claims, but held that because the plaintiffs' state-law claims lacked merit, it did not need to decide the preemption issue.

The Fifth and Ninth Circuits have directly addressed the issue of preemption in the area of flood insurance. In *West v. Harris*, 573 F.2d 873 (5th Cir.1978), the Fifth Circuit held that a plaintiff is not entitled to recover statutory penalties and attorney's fees as provided by state law for arbitrary denial of coverage under NFIA. Although the court did not specify which type of preemption it deemed applicable,

---

1. Not all courts have rejected the express preemption argument. Some have pointed to the language in 42 U.S.C. § 4053 (no longer applicable since the U.S. government took control of all operational responsibilities of NFIP in 1978) and the parallel provision in 42 U.S.C. § 4072 as express preemption. Section 4072 refers to "claims for proved and approved losses covered by flood insurance" and then states that "the claimant ... may institute an action against the Director on such claim in the United States district court ...". Parallel language in Section 4053 led the court in *Mason v. Witt*, 74 F.Supp.2d 955 (E.D.Cal.1999) to find "that Congress clearly manifested an intent to allow only for claims on the contract." *Id.* at 962. The *Mason v. Witt* decision rested on a Third Circuit decision, *Van Holt v. Liberty Mutual*, 143 F.3d 783 (3d Cir.1998) (*Van Holt I*), which the Third Circuit vacated on rehearing. In its subsequent decision in *Van Holt*, 163 F.3d 161 (sometimes referred to as *Van Holt II*), the Third Circuit analyzed 42 U.S.C. § 4072 and found that this section conferred exclusive jurisdiction on federal courts. The Third Circuit did not find, however, that this section expressly preempted state law. As the parties are in agreement on this point, I will not address it further.

the language used by the court is the language of field preemption: "Erie's state law proviso does not apply when a federal statute dominates the subject matter in issue" ... "or when a uniform national rule is necessary to further the interests of the federal government." 573 F.2d at 881. The court emphasized the degree of federal involvement in the National Flood Insurance Program:

Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in the case mandates the application of federal law.

*Id.; see also Hanover Building Materials v. Guiffrida,* 748 F.2d 1011 (5th Cir.1984).

In *Flick v. Liberty Mutual,* 205 F.3d 386 (9th Cir.2000), the Ninth Circuit granted summary judgment against the plaintiff who had failed to file a sworn proof of loss statement within the 60 day window provided by NFIA. The court held that strict compliance to the terms of policies issued by WYOs is required by the Appropriations Clause, because the WYOs draw funds from the U.S. Treasury to pay claims. The court's Appropriations Clause analysis rests on the notion, articulated in *Van Holt,* that WYOs are the fiscal agents of the United States:

Because flood losses, whether insured by FEMA or by a participating WYO insurer, are paid out of the National Flood Insurance Fund, a claimant under a standard flood insurance policy must comply strictly with the terms and conditions that Congress has established for payment. *See* U.S. Const. art I, Section 9, cl. 7 (stating that funds may be drawn from the Treasury only by act of law);

... That is the simple, but powerful command of the Appropriations Clause. *Flick,* 205 F.3d at 394.

The court in *Flick* also notes:

Though our decision is premised on the Appropriations Clause, the outcome of the case is equally supported by the unique interests involved when the federal government participates extensively in a flood insurance program that is national in scope ... In adhering to a rule of strict compliance, we thus avoid disturbing the delicate balance, which FEMA has sought to strike between the need to pay claims and the need to ensure the long-term sustainability of the NFIP. We also avoid the inconsistent results that would occur were we to treat standard flood insurance policies differently depending on whether they are written by WYO insurers or FEMA. 205 F.3d at 396.

Without disagreeing with its earlier decision in *West,* the Fifth Circuit later decided against NFIA preemption of state law in *Spence v. Omaha,* 996 F.2d 793 (5th Cir.1993). The plaintiffs in that case had alleged breach of contract as well as fraud arising out of representations by Omaha Indemnity Insurance Company's agents in the procurement of the policy. The decisions in *Spence* and *West* present a dichotomy between policy procurement and claims handling that appears in other cases.

Two recent district court decisions discussed the distinction between claims handling and policy procurement at length. In *Messa v. Omaha Property and Casualty,* 122 F.Supp.2d 513 (D.N.J.2000), the court stated that "policy procurement is an entirely different creature than claims handling." *Messa,* 122 F.Supp.2d 513, 521 (D.N.J.2000). The court reasoned that, due to the structure of NFIP, WYO insurers have no incentive to act in bad faith during the claims handling process. The

more payments a WYO makes to its insureds under NFIA, the more it receives from the government, because it receives a commission on all of its payments. The same argument does not necessarily apply to cases in which an insurance company is being sued for its procurement activity, because the built-in financial safeguard against bad faith is not present in the procurement context. *Id.*

The court in *Scherz v. South Carolina Insurance Company*, 112 F.Supp.2d 1000 (C.D.Cal.2000), rejected its earlier decision in *Cohen v. State Farm Fire & Casualty*, 68 F.Supp.2d 1151 (C.D.Cal.1999), due in part to the fact that *Cohen* "failed to distinguish between 'claims handling disputes' . . . and disputes involving the initial issuance or procurement of the SFIP." *Scherz*, 112 F.Supp.2d at 1005.

At oral argument in this case, Counsel for plaintiffs conceded that this case is a claims handling case. We therefore specifically limit our decision to cases concerning claims handling disputes.

Most district courts, faced with a dispute over claims handling—as opposed to policy procurement—have held that federal law governs disputes regarding insurance policies under NFIA. *See e.g. 3608 Sounds Ave. Condominium Association v. South Carolina Ins. Co.*, 58 F.Supp.2d 499 (D.C.N.J.1999); *Durkin v. State Farm Mutual Ins. Co.*, 3 F.Supp.2d 724 (E.D.La. 1997), *aff'd*, 141 F.3d 1163 (5th Cir.1998); *Miller v. Omaha Prop. & Cas. Ins. Co.*, H–95–4942 Magistrate Nancy K. Johnson Decision (S.D.Tx. August 13, 1997), adopted by District Judge Sim Lake (S.D.Tx. Sep-

tember 4, 1997); *Oppenheim v. Leone*, 1997 WL 149952 (E.D.La. March 20, 1997).

## V. *Preemption Analysis*

■ With this backdrop of statutes and case-law, I turn to the application of preemption principles to this case. Although the defendant argues both field and conflict preemption, the stronger and more straightforward argument is the second prong of conflict preemption—sometimes referred to as obstacle preemption: allowing plaintiffs to proceed with their state-law claims would stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English*, 496 U.S. at 79, 110 S.Ct. 2270, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).[2]

First, allowing state law to apply to the claims handling process of WYO insurers would undermine the ability of the government to ensure adequate provision of affordable flood insurance through NFIP. The federal government does not have the capabilities nor the experience to take on the role of private insurers in flood-prone areas throughout this country. Nor would private insurers, acting without government support, choose to provide affordable flood insurance. 42 U.S.C. § 4001. For this reason, the NFIA requires the government to supervise and finance the program, while allowing private insurers to serve as intermediaries through the WYO scheme.

It seems likely, however, that the very WYO insurers, upon whom the federal government must rely as intermediaries,

---

**2.** In reaching this conclusion, I take a view that differs from the opinion of another Judge of this Court. In *Conrad v. Omaha Property and Casualty*, 1995 WL 350418 (E.D.Pa. June 7, 1995) the Honorable Thomas N. O'Neill, Jr. found that NFIA did not preempt the application of state laws to claims handling disputes in the flood insurance context. Judge O'Neill, however, did not have the benefit of the Third

Circuit's subsequent ruling in *Van Holt*. It was Judge O'Neill's understanding that "the WYO company and not the government is the real party in interest." The Third Circuit, however, has recognized that WYOs are the "fiscal agents" of the government and that "a suit against a WYO company is the functional equivalent of a suit against FEMA." *Van Holt*, 163 F.3d at 166.

would be less willing to participate in the NFIP program were they to be held subject to state law claims for bad faith or unfair trade practices. *See Messa*, 122 F.Supp.2d 513, 522–23 (D.N.J.2000). A decision to allow plaintiffs to proceed against WYO insurers on state law grounds would undermine the partnership between the government and private insurers that has proven critical to the functioning of NFIP and has enabled the government to provide flood insurance nationwide.

Second, allowing state law to apply to the WYO insurers would undermine Congress' intention to create a nationally unified program as evidenced in the language of 42 U.S.C. § 4001. If WYOs were subject to state law claims, NFIP insurers and insureds would effectively be subject to differing requirements depending not only on the state in which the policy was issued but also on whether the issuer was FEMA itself or a WYO.

In this context, I "place some weight" on FEMA's views, as expressed in its brief to the Third Circuit in *Van Holt* and in its rule that becomes effective on December 31, 2000. *Geier v. American Honda*, 529 U.S. 861, 120 S.Ct. 1913, 1926, 146 L.Ed.2d 914 (2000) (In holding that a defective design action under District of Columbia tort law is preempted by a Federal Motor Vehicle Safety Standard promulgated by the Department of Transportation, the Court "place[d] some weight upon DOT's interpretation" of the safety standard).[3]

In its amicus brief in *Van Holt*, the government stated: "allowing State regulators to breathe down the necks of the WYO companies, as happened here, would make the 50 States co-administrators of the program along with FEMA, a result Congress plainly did not intend. It would also deprive the program of the national uniformity Congress did intend, and make a hodgepodge of the program, undermining the federal mission." U.S. Government Amicus Brief in *Van Holt*, at 13.

Third, allowing state claims to be brought against a WYO insurer under a SFIP would take the ability to control costs under NFIA out of Congress' hands. In *Van Holt*, the Third Circuit emphasized that WYOs are fiscal agents of the U.S. government. 163 F.3d at 166. Controlling costs was among the goals explicitly named by Congress in the National Flood Insurance Act. 42 U.S.C. § 4001. Removing the ability to control costs from Congress by subjecting WYOs, the fiscal agents of the federal government, to state law claims would contradict this goal.

The plaintiffs in this case argue that applying extra-contractual state law claims to State Farm would not result in a charge on the treasury, because NFIA does not require FEMA to reimburse WYOs for litigation costs or awards arising out of

---

**3.** In *Davis*, the court, after seeking FEMA's views on whether state law was preempted in this area, refused to give any weight to FEMA's position, quoting a passing comment by the Supreme Court in *Smiley v. Citibank*, 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) that it would assume, without deciding, that the question of whether a statute is preemptive "must always be decided de novo by the Courts." 517 U.S. at 744, 116 S.Ct. 1730. *Davis*, 96 F.Supp.2d at 1000. In *Geier*, however, the Supreme Court did give some weight to DOT's views on the preemptive effect of a DOT regulation. One could distinguish Geier on the ground that in that case, the Supreme Court was considering the agency's views of its own regulation; whereas, in this case, we are considering FEMA's views of Congress' intent in passing a statute. At a minimum, however, we may give as much weight to the agency's views of the purpose and structure of the statute as did the Third Circuit in *Van Holt*. In any event, I agree with FEMA's position that allowing extra-contractual state law causes of action in connection with claims handling would conflict with the purposes and goals of NFIP.

actions outside of the scope of the agreement. NFIA includes the following section under the heading "Limitation on Litigation Costs":

> If it is determined that the claim is grounded in actions by the Company that are outside the Scope of the Arrangement, the National Flood Insurance Act, and 44 C.F.R. chapter 1, subchapter B, and/or involve issues of insurer/agent negligence ..., the Office of the General Counsel shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement. In the event the Administrator determines that the claim is grounded in actions significantly outside the scope of this Arrangement, the Company will be notified ... if the decision is that any award or judgment for damages arising out of such actions will not be recognized .. as a reimbursable loss cost, expense or expense reimbursement.

44 C.F.R. Pt. 62, App. A, art. III(D)(4). Plaintiffs contend that FEMA would not have to reimburse State Farm for any damages arising out of this case. There is no allegation in the complaint, however, either that FEMA has made any such determination in this case or that State Farm's actions are "significantly outside of the scope of the Arrangement."

Even if FEMA were not required to reimburse State Farm in this case, however, allowing extra-contractual state law claims to be brought against WYOs might nevertheless result in an indirect burden on the treasury. Without the guarantee of reimbursements from FEMA, WYOs might have the incentive to overpay claims as a means of decreasing the likelihood of bad faith claims. *Scherz*, 112 F.Supp.2d, at 1008. Such overpayment would affect FEMA and the U.S. Treasury, as the WYO would not only use the premiums received under NFIA but would also draw on FEMA letters of credit. Providing such an incentive for overpayment contradicts the goals of NFIA: the provision of flood relief and affordable flood insurance without overburdening the U.S. Treasury.

For all of these reasons, I hold that extra-contractual state-law causes of action related to the handling of claims under NFIA are preempted by federal law.[4]

Although I base my decision on the obstacle prong of conflict preemption, field preemption may also apply. Most of the cases concerning the preemptive effect of NFIA do not discuss which type of preemption applies. This may be because the categories are in fact not very distinct. In *English*, the Supreme Court noted that "field pre-emption may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." 496 U.S. at 79 n. 5, 110 S.Ct. 2270.[5]

---

**4.** The defendant has argued that allowing plaintiffs to proceed with their extra-contractual state-law claims against State Farm would also violate the Appropriations Clause of the United States Constitution. In *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the Court stated that the Appropriations Clause prohibits the judiciary from granting a money claim against the federal government that is not authorized by statute. 496 U.S. at 424, 110 S.Ct. 2465. The Ninth Circuit accepted this analysis in *Flick*, basing its decision largely on the Appropriations Clause. Because I am granting the motion on the ground of preemption, I do not decide the Appropriations Clause issue.

**5.** In a recent article in the Georgetown Law Journal, Professor Viet D. Dinh makes this same point at length:

Two recent district court decisions reflect the difficulty of distinguishing between the two types of preemption. In *Messa*, the court held that field preemption is applicable; whereas, in *Scherz*, the court determined conflict preemption to be the appropriate paradigm. The arguments used by the two courts, however, are often overlapping. Both courts note that WYO insurers have no financial incentive to engage in bad faith behavior in claims handling. Both courts further emphasize the importance of uniformity in enabling NFIA to achieve its goals. *Messa*, 122 F.Supp.2d 513, 522–23 (D.N.J. 2000); *Scherz*, 112 F.Supp.2d at 1008–9. The fact that the courts, despite similar arguments, rely on different types of preemption reveals how closely related field and conflict preemption are.

■ In analyzing a case for field preemption, the first task is to define the field. If the field consists of flood insurance in general, then there might not be field preemption, because most courts have left the regulation of the procurement of flood insurance policies in part to the states. If the field consists of claims handling in the area of flood insurance, then the argument for field preemption is stronger. Some courts have rejected field preemption, however, even when the field is defined as claims handling in the area of flood insurance. In *Scherz*, for example, the court stated that the field of claims handling is not occupied entirely by the federal government under NFIA, because the "limitation on litigation costs" section in Title 44 of the Code of Federal Regulations contemplates negligence actions against a WYO insurer. 44 C.F.R. Pt. 62, App. A, art. III(D)(4); *Scherz*, 112 F.Supp.2d at 1006–7. It is difficult to say what this section contemplates; the legislative history is not helpful. I would be reluctant to deny preemption on the existence of this section alone. But in view of my decision that extra-contractual claims are preempted on the basis of the obstacle prong of conflict preemption, I need not resolve questions regarding the significance of the "limitation on litigation costs" section.

Defendant has also moved for summary judgment with regard to plaintiffs' extra-contractual state law claims on the ground that plaintiff has failed to state a claim under the UTPCPL and under 42 Pa.C.S. § 8371. Because I am granting summary judgment on the basis of preemption, I do not reach those arguments.

An Order follows.

Although commentators and the Supreme Court frequently discuss the various mechanisms on this spectrum as deriving from distinct doctrinal sources, the boundaries dividing these doctrines are not so clear. But the preemptive effect on state law is similar across doctrinal lines. For example, although the statement in *Hines v. Davidowitz*, that state law is preempted if it 'stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress,' is cited as the classic articulation of obstacle preemption, *Hines* may be better understood as a field preemption case because the opinion relied on the uniquely national nature of regulating aliens to hold that state laws on the same subject are displaced. Likewise, in crafting the government contractors' defense to state tort law liability, the Court in *Boyle v. United Technologies Corp.* explicitly recognized the kinship its decision shares with traditional preemption analysis. The point is not to suggest that the traditional doctrinal distinctions have no purchase whatsoever, but simply that all of the multifarious ways through which state law can be displaced are closely related to each other analytically and functionally. Thus, neither specific preemption doctrines nor general statutory preemption jurisprudence is an island, entirely of itself, but must be evaluated as part of a wider spectrum of federal displacement of state laws.

Viet D. Dinh, *Reassessing the Law of Preemption*, 88 Geo. L.J.2085, 2098–99 (2000) (citations omitted).

## ORDER

AND NOW, this 30th day of November, 2000, upon consideration of Defendant State Farm Fire and Casualty Company's Motion for a Judgment on the Pleadings, Plaintiffs' response thereto, and Defendant's reply, and after an oral argument on said motion, it is hereby ORDERED and DECREED that said Motion is GRANTED. Counts 1 and 2 of the Plaintiffs' complaint are dismissed for the reasons expressed in an Opinion of today's date.