**Jacqueline Z. HOUCK; Richard Perrini; and all others similarly situated, Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY; State Farm Insurance Group; John C. Mallet, individually and in his capacity as a class representative for State Farm Insurance Agents; John Doe, Defendants.**

No. Civ.A. 9:01–3049–23.

United States District Court, D. South Carolina, Beaufort Division.

March 18, 2002.

George Richardson Wieters, Hilton Head Island, SC, Curtis Lee Coltrane, Gregory M. Alford, Coltrane & Alford, Hilton Head Island, SC, Donald E. Jonas, Cotty & Jonas, Columbia, SC, for Plaintiffs.

Monteith P. Todd, Laura W. Robinson, Sowell, Gray, Stepp & Laffitte, Columbia, SC, for Defendants.

### *ORDER*

DUFFY, District Judge.

This matter is before the court upon Plaintiffs' Motion to Remand. Defendants oppose this motion. For the following rea-

sons, Plaintiffs' Motion to Remand is granted.

## I. *BACKGROUND*

Plaintiffs are homeowners who purchased flood insurance from Defendants. Plaintiffs, individually and on the behalf of those similarly situated, allege that Defendants improperly steered them to purchase flood insurance coverage which was more expensive and in excess of their discernable needs. Plaintiffs originally filed this action in the Beaufort County Court of Common Pleas on June 20, 2001. Defendants removed this case on July 20, 2001 alleging federal question jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff timely filed its Motion to Remand on August 16, 2001.

The flood insurance purchased by Plaintiffs is part of the National Flood Insurance Program (NFIP). Congress established the NFIP in 1968 pursuant to the National Flood Insurance Act (NFIA), 42 U.S.C. § 4001 *et seq.* The NFIP is federally subsidized and currently administered by the Federal Emergency Management Agency (FEMA). 42 U.S.C. §§ 4001–4129. In 1983, FEMA promulgated regulations that enabled the agency to use private insurers, called Write–Your–Own insurance companies (WYO), as intermediaries in providing flood insurance. *See* 44 C.F.R § 61.13(f).[1] The flood insurance policies issued under the NFIP are called Standard Flood Insurance Policies (SFIPs).[2] FEMA regulations exclusively establish the terms of the SFIP as well as the rate structures and premium costs. WYO companies market, issue, and handle claims adjustment of these SFIPs.[3]

WYO companies issue SFIPs in their own names. 44 C.F.R. § 61.13(f), 62.23(a). These companies collect premiums in segregated accounts from which they pay claims and make necessary refunds under those policies. 44 C.F.R. § 62, App. A, Arts. II(E), III(D), and III(E). After deducting the companies' fees and administrative costs, premiums collected from policy holders are deposited in the National Flood Insurance Fund in the U.S. Treasury. 42 U.S.C. § 4017(d). When the WYO companies lack sufficient funds in their segregated accounts, they draw on FEMA letters of credit from the U.S. Treasury to pay claims and make refunds. While WYO companies defend against claims, FEMA reimburses them for certain defense costs, 44 C.F.R. § 62.23(i)(6),[4] because WYO companies are fiscal agents of the United States, 42 U.S.C. § 4071(a)(1).[5]

---

1. "Today, these companies write over ninety percent of all SFIPs in the country." *Messa v. Omaha Prop. & Cas. Ins. Co.,* 122 F.Supp.2d 513, 518 (D.N.J.2000). Defendant State Farm is a WYO company.

2. The government requires all WYO companies to use the SFIPs—which cannot be altered by those companies—in order to maintain control over the provision of flood insurance and the resulting burden on the Treasury. 44 C.F.R. § 61.4(b); 44 C.F.R. § 61.13(d).

3. *FEMA also issues flood insurance directly to consumers.*

4. This regulation provides:

Pursuant to the Arrangement, the responsibility for defending claims will be upon the Write Your Own Company and defense costs will be part of the unallocated or allocated claim expense allowance, depending on whether a staff counsel or an outside attorney handles the defense of the matter. Claims in litigation will be reported by WYO Companies to FIA upon joinder of issue and FIA may inquire and be advised of the disposition of such litigation.
 44 C.F.R. § 62.23(i)(6).

5. *However, WYO companies do not act as general agents of the United States.* 44 C.F.R. § 62.63(g).

Congress established the NFIP "among other things, to limit the damage caused by flood disasters through prevention and protective measures, spread the risk of flood damage among many private insurers and the federal government, and make flood insurance 'available on reasonable terms and conditions' to those in need of it." *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir.1998) (quoting 42 U.S.C. § 4001(a)). The NFIP was particularly necessary given the unavailability of flood insurance from private insurance companies unable to provide flood insurance on an economically feasible basis. 42 U.S.C. §§ 4001 & 4002. To encourage private insurers to provide flood insurance, the federal government provides a number of incentives already noted above. First, the government bears the ultimate responsibility for financing. 44 C.F.R. § 62.23(f); 44 C.F.R.Pt. 62, App. A, arts II(E), IV(A), VII(A). Second, the government provides commissions on all benefit payments made by WYOs. 44 C.F.R.Pt. 62, App. A, art. III(C)(1).

## II. *STANDARD*

 Removal statutes must be construed strictly against removal. *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994). The party seeking removal bears the burden of establishing the right to removal, including compliance with the jurisdictional requisites. *Id.* "If federal jurisdiction is doubtful, a remand is necessary." *Handyman Network, Inc. v. Westinghouse Savannah River Co.*, 868 F.Supp. 151, 153 (D.S.C. 1994) (citing *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994)); *see also Whitman v. Raley's, Inc.*, 886 F.2d 1177, 1180 (9th Cir.

1989). Removal jurisdiction is determined on the basis of the state court complaint at the time of removal, and the removing party bears the burden of establishing the existence of federal jurisdiction. *Woodward v. Newcourt Comm. Fin. Corp.*, 60 F.Supp.2d 530, 531 (D.S.C.1999). It is uncontested that this case involves non-diverse parties and that the court, therefore, does not have diversity jurisdiction. *See* 28 U.S.C. § 1332. Thus, the only question is whether there is subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[6]

In order for a defendant to remove a case filed in state court, there must exist original federal jurisdiction. 28 U.S.C. § 1441(a). Defendants contend that this court has original federal question jurisdiction of this action under 28 U.S.C. § 1331. Section 1331 provides: "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The meaning of the phrase "arising under" is not for want of Supreme Court precedent regarding its meaning and effect. Most important, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see Louisville & Nashville Railroad v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

 Even when no federal claim appears on the face of the complaint, the court may still uphold removal if it appears that the complaint has been "artfully pled" in order to avoid reference to any federal law. *See Franchise Tax Bd. of State of*

---

**6.** Defendants do not assert that this court has exclusive jurisdiction pursuant to 42 U.S.C. § 4072. Section 4072 "vests district courts with original exclusive jurisdiction over suits by claimants against WYO companies based

on partial or total disallowance of *claims* for insurance arising out of the National Flood Insurance Act." *Van Holt,* 163 F.3d at 167 (emphasis added).

*Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Specifically, if Plaintiffs have pled state law claims that involve issues either completely preempted by federal law, or that necessarily implicate a substantial question of federal law, then the court may assume federal-question jurisdiction of the case. Furthermore, a defendant may not remove a case on the basis of an anticipated or even inevitable federal defense, but instead must show that a federal right is an essential element of the plaintiff's cause of action. *Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *see also Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction.").

### III. *FEDERAL QUESTION JURISDICTION*

In the present case, Plaintiffs have pled six state-law causes of action: (1) breach of contract; (2) breach of implied warranty of good faith and fair dealing; (3) negligence; (4) negligent misrepresentation; (5) fraud; and (6) civil conspiracy. Nevertheless, Defendants oppose remand contending that this controversy involves a federal question pursuant to the National Flood Insurance Act of 1968 (NFIA) as amended, 42

U.S.C. Section 4001 *et seq.* and its attendant rules and regulations. However, Defendants do not claim Plaintiffs' state law claims are completely preempted.[7] Instead, Defendants argue that substantial federal questions are evident from the face of the Plaintiffs' Complaint and significant federal interests are at stake.

The Fourth Circuit Court of Appeals has held that in certain circumstances a federal question may exist in cases where a uniquely federal interest is "so important that the 'federal common law' supplants state law either partially or entirely regardless of Congress' intent to preempt the area involved." *Caudill v. Blue Cross and Blue Shield of North Carolina,* 999 F.2d 74, 77 (4th Cir.1993) (citing *Boyle v. United Tech. Corp.,* 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)).[8] The Fourth Circuit relied on the two-part test for determining the applicability of federal common law set forth in *Boyle.* "First, the matter must involve a uniquely federal interest." *Id.* at 78 (citing *Boyle,* 487 U.S. at 507, 108 S.Ct. 2510).[9] However, "a significant federal interest alone ... will not allow federal common law to displace state law." *Id.* Federal common law displaces state law only when a "significant conflict" exists "between the federal interest or policy and the effect of the state law," or the state law as applied frustrates " 'specific policy objectives' of federal legislation.' "

---

**7.** Defendants concede that some claims may possibly arise under state law in the context of NFIP marketing issues. (Defs.' Mem. in Opp. at 6.)

**8.** In *Caudill,* the plaintiff, a federal employee, sued her insurer for breach of contract, alleging that the insurer had improperly denied her coverage for a medical procedure. The defendant removed the case to federal court on the basis of federal question jurisdiction under the Federal Employees Health Benefits Act (FEHBA).

**9.** A uniquely federal interest exists when the dispute " 'touch[es] the rights and duties of

the United States.' " *Boyle,* 487 U.S. at 506, 108 S.Ct. 2510 (quoting *Bank of America Nat. Trust & Sav. Ass'n v. Parnell,* 352 U.S. 29, 33, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956)). When the United States' interest is "remote or speculative and the dispute involves only private parties, federal common law will not apply." *Caudill,* 999 F.2d at 77 (citing *Boyle,* 487 U.S. at 506, 108 S.Ct. 2510). However, federal common law may still "apply if the litigation would directly affect a federal interest." *Id.* (citing *Boyle,* 487 U.S. at 507, 108 S.Ct. 2510).

*Id.* (quoting *Boyle*, 487 U.S. at 507, 108 S.Ct. 2510) (citations omitted).[10]

## A. Significant Federal Interests

Defendants set forth several issues they characterize as substantial, federal issues sufficient to establish jurisdiction. Defendants first contend that the legal duties governing the conduct of insurance agents and WYO carriers in the sale of NFIP policies are established by various federal rules and regulations. The Arrangement between the WYO companies and FEMA states that WYO companies "shall issue policies under the regulations prescribed by the Administrator in accordance with the Act." 44 C.F.R. 62, App. A, Art. II.D.2. The Arrangement further provides that WYO companies "shall market flood insurance policies in a manner consistent with the marketing guidelines established by the Federal Insurance Administration." 44 C.F.R. 62, App. A, Art. II.G. Defendants argue that the various regulations relating to marketing, such as those noted above, suggest that federal regulations solely govern policy issuance displacing any state law governing insurers' conduct when marketing and issuing policies. However, many of these standards deal with conduct such as, *inter alia*, altering the standard policy form,[11] and not with the alleged conduct of Defendants. Moreover, the regulations, by their own terms, only concern those actions within the scope of the Arrangement. As the court will discuss *infra*, much, if not all, of the alleged conduct on the part of the Defendants would fall outside of this scope.

Even if such federal regulations are applicable, they would not necessarily suggest that a substantial federal interest exists.[12] To establish federal question

**10.** Using the *Boyle* test, the Fourth Circuit held that federal law entirely supplanted state law in the area of federal employee health benefits. *Caudill*, 999 F.2d at 78–79. The court first found that the interest in that case was "uniquely federal because it involves health benefits for federal employees across the country." *Id.* at 78. The court noted that state law liability for providers of federal insurance plans would "seriously damage not only the government's ability to enter into contracts with health insurers, but also would affect the price paid for such contracts." *Id.* Moreover, the court noted that "[m]ost importantly" the federal government was a party to the contract at issue in that case. *Id.*

The court then found that an extensive conflict existed between the federal interest and state law because "[w]hen the federal interest requires the application of a uniform rule, federal common law displaces state law entirely." *Id.* at 79. The court noted that "[a]pplication of state law to this federal contract would result in a patchwork quilt of benefits that varied from state to state under the same contract because of the vast differences in the common law of contracts from state to state." *Id.* at 78–79. Therefore, "the very application of state contract law would undermine the uniformity envisioned by Congress when it delegated the authority to interpret health benefit contracts to OPM. Application of fifty different state contract laws to FEHBA claims would entirely defeat the purpose of OPM review." *Id.* at 79.

**11.** While flood insurance can be issued by private WYO insurers, FEMA fixes the terms and conditions of the policies. *McCormick v. Travelers Insurance Co.*, 86 Cal.App.4th 404, 103 Cal.Rptr.2d 258, 262 (Cal.Ct.App.2001) (citing 44 C.F.R. §§ 61.4(b); 61.13(d); 62.23(c) & (d); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir.1998)). "In fact, the standard language to be included in all federal flood insurance policies is set out verbatim in the Code of Federal Regulations, and no provision of the policy may be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." *Id.* (citing 44 C.F.R. §§ 61.4(b); 61.5(e); 61.13(a), (d) & (e); 62.23(c) & (d)). The court notes that Defendants are not accused of altering the SFIP.

**12.** Defendants, in relying on *Caudill*, have not argued that the applicability of federal standards and regulations to the marketing of flood insurance constitutes a federal ingredient in this case sufficient by itself to confer the exercise of federal question jurisdiction. However, the court finds it necessary to ad-

jurisdiction under § 1331 requires more than the presence of a federal ingredient in the litigation. However, determining when the presence of a federal issue in state law claims constitutes a federal question is a decidedly murky endeavor as evidenced by the line of cases dealing with that very issue. The United States Supreme Court in *Gully v. First National Bank* provided the following explanation:

> To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.

299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (citations omitted). In a later opinion, the Court explained that federal courts have jurisdiction under § 1331 to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Trust for Southern California*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Assuming for the moment that some federal standards or duties may apply to Defendants' alleged conduct and Plaintiffs' state law claims, the court does not consider the presence of these standards or duties as "an essential element" of their case. These federally established standards or duties would not be exclusive to the extent of precluding any common law standards or duties applicable to the Defendants. Nor would the presence of these federal standards suggest that Plaintiffs' "right to relief necessarily depends on resolution of a substantial question of federal law," because Plaintiffs' claims may be sustained by establishing either a breach of the federal standards or common law standards.

Despite these conclusions, it is useful, given the abstract nature of the above-noted formulations, to further consider this issue by examining specific cases in which the Supreme Court has addressed whether a federal question exists because of the importance of a federal law to a state law claim. *See* Erwin Chemerinsky, *Federal Jurisdiction* 282 (3d ed.1999). In *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921), a shareholder sought to enjoin a corporation from purchasing federally issued bonds claiming those bonds were issued in violation of the United States Constitution. The shareholder alleged in a state law cause of action that the bonds were unconstitutional, and therefore the corporation could not purchase them based on a state statute regarding permissible investments. The Court held that a federal question was present because the challenge to the federal statute was an integral part of the plaintiff's claim stating "[t]he general rule is that, where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction." *Id.* at 199, 41 S.Ct. 243.

Later, in *Moore v. Chesapeake & Ohio R. Co.*, 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934), an injured railroad worker sought damages under a state statute which provided that an employee could not be contributorily negligent if the employer

---

dress this issue which is closely related to the

arguments set forth by Defendants.

violated any safety law which contributed to the injury. A federal statute regulated railroad safety, and therefore a key question was whether the railroad violated that federal statute. The Court held no federal question jurisdiction existed because: "it does not follow that a suit brought under the state statute which defines liability to employees who are injured while engaged in intrastate commerce, and brings within the purview of the statute a breach of the duty imposed by the federal statute, should be regarded as a suit arising under the laws of the United States and cognizable in the federal court in the absence of diversity of citizenship." *Id.* at 214–15, 54 S.Ct. 402.

The Court attempted to reconcile the seeming conflict between *Smith* and *Moore* in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) stating:

> [T]he difference in results can be seen as manifestations of the differences in the nature of the federal issues at stake. In *Smith*, as the Court emphasized, the issue was the constitutionality of an important federal statute. *See* 255 U.S., at 201, 41 S.Ct., at 245 ("It is . . . apparent that the controversy concerns the constitutional validity of an act of Congress which is directly drawn in question. The decision depends upon the determination of this issue"). In *Moore*, in contrast, the Court emphasized that the violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action. *See* 291 U.S., at 216–217, 54 S.Ct., at 406–407 (" 'The action

fell within the familiar category of cases involving the duty of a master to his servant. This duty is defined by the common law, except as it may be modified by legislation. The federal statute, in the present case, touched the duty of the master at a single point and, save as provided in the statute, the right of the plaintiff to recover was left to be determined by the law of the State' ") (quoting *Minneapolis, St. P. & S.S.M.R. Co. v. Popplar*, 237 U.S. 369, 372, 35 S.Ct. 609, 610, 59 L.Ed. 1000 (1915)).

*Id.* at 815 n. 12, 106 S.Ct. 3229. While this approach may have its problems, it appears a "majority of the Court now has endorsed the position advanced by commentators that the existence of a federal question depends on 'an evaluation of the nature of the federal interest at stake.' " *Chemerinsky, supra*, at 284–85 (quoting *Merrell Dow*, 478 U.S. at 815 n. 12, 106 S.Ct. 3229). Again assuming the federal regulations are applicable, the court views such a federal interest closer to *Moore* on the continuum between *Smith* and *Moore* because these federal standards would merely constitute an aspect of the elements of Plaintiffs' state law claims. *Cf. Reveal v. Stinson*, 115 F.Supp.2d 688, 691 (S.D.W.Va.2000). Accordingly, the court would rule no federal question existed despite the presence of these federal standards in Plaintiffs' state law claims.[13]

Returning to the *Caudill* analysis, Defendants further argue that the Arrangement provides that WYO companies may be reimbursed for "[l]oss payments [which] include payments as a result of litigation

---

**13.** On a related note, the court recognizes that the NFIP is central to this case in a factual sense. The Plaintiffs purchased a SFIP, the federal government mandates the applicable rate and premium structures, and whether Plaintiffs qualified for a less expensive policy than those offered by Defendants will be determined by standards promulgated

by FEMA. However, state courts are clearly competent to make such straightforward determinations which again simply comprise a portion of the elements of Plaintiffs' state law claims. Moreover, while these federal aspects exist, the central legal issues turn on state law such as the duties owed by Defendants to Plaintiffs in this context.

which arises under the scope of this Arrangement, and the Authorities set forth above." 44 C.F.R. 62, App. A, Art. III. D.2.[14] Defendants contend that Plaintiffs have not alleged any conduct outside of the scope of the Arrangement, and therefore, FEMA would pay all costs attendant to this litigation giving rise to another substantial federal interest.

However, the provisions cited by Defendants do not discuss reimbursement for judgments on tort claims against WYO insurers. *See Spence v. Omaha Indemnity Insurance*, 996 F.2d 793, 796 n. 17 (5th Cir.1993); *see also Powers v. Autin–Gettys–Cohen Ins. Agency*, 2000 WL 1593401, *3 (E.D.La. Oct.24, 2000) ("Although WYO insurers may draw on FEMA letters of credit to pay SFIP claims the WYO– FEMA agreement and the appropriate regulations do not permit reimbursement for a judgment based on a state law tort claim."). Moreover, the Arrangement provides the following:

> The parties [to the Arrangement] shall not be liable to each other for damages caused by inadvertent delay, error, or omission made in connection with any transaction under this Arrangement. In the event of such actions, the responsible party must attempt to rectify that error as soon as possible after discovery of the error and act to mitigate any costs incurred due to that error. In the event that steps are not taken to rectify the situation and such action leads to claims against the company, the NFIP,

> or other related entities, the responsible party shall bear all liability attached to that delay, error or omission to the extent permissible by law.

44 C.F.R. 62, App. A, Art. IX.[15]

While Plaintiffs may not have explicitly alleged that Defendants engaged in conduct outside the scope of the Arrangement, such an allegation is implicit in their pleadings. The crucial issue then becomes whether the alleged conduct giving rise to Plaintiffs' state causes of action falls outside the scope of the Arrangement. If not within the scope of the Arrangement, then federal standards do not apply and no federal funds would be involved. Accordingly, no federal interest would exist. *Cf. Neuser v. Hocker*, 140 F.Supp.2d 787, 800 (W.D.Mich.1999) ("If . . . public funds are not at issue . . . . state common law principles would provide the framework for proper resolution of plaintiff's [state law] claim.").

Several courts in varying contexts have addressed whether certain state claims are within the scope of the Arrangement and therefore reimbursable. These cases have generally done so when addressing whether certain state law claims have been preempted after the NFIA and the regulations promulgated in relation to the Act. Nevertheless, these cases are instructive in this instance. Although not in the context of a motion to remand, the Fifth Circuit Court of Appeals has held that a WYO insurer was not immune from liability for misrepresentation made by its

---

14. The Arrangement provides that WYO companies notify the Flood Insurance Administration (FIA) of claims in litigation against the company. 44 C.F.R. 62, App. A, Art. III.D.3. "If it is determined [by the FEMA Office of General Counsel] that the claim is grounded in actions by the Company that are outside the scope of this Arrangement, the National Flood Insurance Act, and 44 CFR chapter 1, subchapter B, and/or involve issues of insurer/agent negligence as discussed in Article IX

of this Arrangement, the OGC shall make a recommendation to the Administrator as to whether the claim is grounded in actions by the Company that are significantly outside the scope of this Arrangement." 44 C.F.R. 62, App. A, Art. III.D.4.

15. Similarly, 42 U.S.C. § 4081(c) specifically provides that FEMA may not hold harmless or indemnify an agent or broker for his or her errors or omissions.

agents and that the statutes and regulations relating to the NFIP did not immunize the WYO from state law tort liability. *Spence,* 996 F.2d at 797.[16] Specifically, the court stated:

> FEMA regulations disclaiming any agency relationship with WYO companies, as well as the terms of the FEMA-WYO agreement, more indicate intent to leave those insurers responsible for their own tortious conduct. The regulation relied on by Omaha, read as a whole, plainly evinces an intent to prevent expansion by SFIP coverage through misrepresentations by private parties involved with the program, thereby protecting the government from expanded liability. We decline to accept a reading of that provision immunizing WYO companies from liability for the tortious conduct of their agents.

*Id.*

██ The *Spence* decision makes a critical distinction between claims seeking recovery under the SFIP—which are preempted—and those arising from alleged misrepresentations made during the procurement of the policy—which are not. *See id.* at 796. Thus, *Spence* is not viewed " 'as authorizing all state law causes of action related to disputes over federally-funded flood insurance, only those causes related to misrepresentations in the *procurement* of such flood insurance. Claims involving the *interpretation* of policies issued under the NFIP must be governed by federal law.' " *Jamal v. Travelers Lloyds of Texas Ins.,* 129 F.Supp.2d 1024, 1029 (S.D.Tex.2001) (quoting *Miller v. Omaha Prop. & Cas. Ins. Co.,* No. H–95–4942, slip op. at 8 (S.D.Tex. Sept. 4, 1997)) (emphasis in original). Furthermore, an-

other court has explained the distinction between policy procurement and policy interpretation as follows:

> Policy procurement is an entirely different creature than claims handling. NFIA regulations provide that FEMA will reimburse WYO insurers for the claims and the claims handling, as well as for the costs of defending a lawsuit based on claims handling, and there is thus no incentive for the WYO insurer to deny a claim in part or in full—the more claims the WYO insurer agrees to pay, the more money it will receive from the U.S. Treasury. On the other hand, the WYO insurers may have the incentive to make fraudulent misrepresentations when trying to get potential customers to sign up for flood insurance in the first place. The *Spence* court was correct that FEMA regulations indicate that the WYO insurance companies do not act as general agents for the federal government and that FEMA intended to "leave those insurers responsible for their own tortious conduct." The tortious conduct about which the Fifth Circuit was concerned in *Spence* was fraud in policy procurement, not claims handling.

*Messa v. Omaha Prop. & Cas. Ins. Co.,* 122 F.Supp.2d 513, 521–22 (D.N.J.2000) (citation omitted); *see also Scherz v. South Carolina Ins. Co.,* 112 F.Supp.2d 1000, 1005, 1008–10 (C.D.Cal.2000) (rejecting its earlier decision in *Cohen v. State Farm Fire & Cas.,* 68 F.Supp.2d 1151 (C.D.Cal. 1999), in part due to the fact that *Cohen* "failed to distinguish between 'claims handling disputes' . . . and disputes involving the initial issuance or procurement of the SFIP."); *Neill v. State Farm Fire & Cas. Co.,* 159 F.Supp.2d 770, 775 (E.D.Pa.2000)

---

**16.** The issue facing the *Spence* court was whether the federal statute of limitations under the NFIA applied to all of the claims in that case. *See* 996 F.2d at 794–97. The court ruled that the one-year federal limitation ap-

plied to a contract claim based on the policy, but the Texas statute of limitations applied to fraud claims based on the procurement of the policy. *Id.*

(recognizing that "[t]he decisions in *Spence* and [*West v. Harris*, 573 F.2d 873 (5th Cir.1978) ] present a dichotomy between policy procurement and claims handling that appears in other cases.").[17] The court agrees with the above reasoning and notes that the claims in this lawsuit all arise in the policy procurement context. Plaintiffs have no claims, for example, regarding the denial of a claim under the policy.

 Thus, as stated above, whether the conduct underlying the state causes of action pled by Plaintiff fall outside the scope of the arrangement is crucial to whether these claims effect a substantial federal interest. If the conduct falls outside the Arrangement, then the regulations do not address such actions, and further no federal funds would be involved because such costs associated with those claims would not be reimbursable. Beginning first with Plaintiffs' fifth and sixth causes of action, the court concludes that intentional conduct in the policy procurement context constituting fraud and civil conspiracy is substantially outside the scope of the Arrangement. *See, e.g., Spence*, 996 F.2d at 796 ("[W]hile WYO insurers may draw on FEMA letters of credit to pay SFIP claims, the WYO–FEMA agreement does not permit such draws to cover a WYO company's liability for fraud."); *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 237 (Alaska 2000) ("It appears to us that fraud and misrepresentation are 'outside the scope of this Arrangement.' Moreover, considering that the regulations do not cover the negligence of insurers or their agents, it seems highly unlikely that willful acts such as fraud or intentional misrepresentation would be covered.").[18] Nevertheless, Defendants contend that Plaintiffs' fraud claim falls within the ambit of issues regulated by the NFIP because Plaintiffs allege that Defendants made misrepresentations concerning "the types and nature of flood insurance coverage." Defendants contend that FEMA has sought to avoid precisely such claims as evidenced by the following:

> The standard flood insurance policy is authorized only under terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.

44 C.F.R. § 61.5(e). However, this regulation does not have the effect of immunizing

---

17. *West* involved, in addition to breach of contract claims for failure to pay a claim in part or in full, state tort or statutory claims for attorney's fees, punitive damages, and other damages based on bad faith handling of the claim. The Fifth Circuit held that "federal law controls disputes over the coverage of insurance policies issued pursuant to the National Flood Insurance Act of 1968.... Congress has undertaken to establish a comprehensive flood insurance program under the control of the Department of HUD to achieve policies national in scope, and the interest in uniformity of decisions compels the application of federal law." 573 F.2d at 882.

18. The exclusion of intentional, wrongful conduct from the scope of the Arrangement is buttressed by the Declaration of James S.P. Shortley, the Director of Claims for the FIA in 2000. *See* (Defs.' Ex. B.) This declaration was provided to the Alaska Supreme Court in *Moore*. Mr. Shortley states that "[a]ctions that are determined to be significantly outside the scope of the Arrangement include such things as forgery." (Defs.' Ex. B at ¶ 6.) Fraud and conspiracy are sufficiently similar to forgery as they all require intent. For this reason, the court views these claims as significantly outside the scope of the Arrangement.

agents from liability for fraudulent statements concerning the scope of coverage, but instead it protects federal funds by making clear that such unauthorized actions cannot operate to waive a provision of the SFIP. *Cf. Kennedy v. CNA Ins. Co.,* 969 F.Supp. 931, 935 n. 6 (D.N.J.1997). Moreover, this case does not involve misrepresentations concerning the scope of coverage under the SFIP. Instead, Defendants allegedly misrepresented what types of policies were available to the Plaintiffs.[19] Accordingly, the court finds no substantial federal interest concerning these causes of actions because they are outside the scope of the Arrangement and not reimbursable.

Plaintiffs also set forth a negligence cause of action alleging the following:

> Because the Defendants solicited the Plaintiffs and others similarly situated and expressly undertook to advise the Plaintiffs as to the types and amounts of coverage they should obtain for flood insurance purposes, the Defendants had a duty to give Plaintiffs thorough, complete and accurate information and advice, and not to conceal from the Plaintiffs the fact that the Preferred Risk Policy was significantly less expensive policy which was more than adequate for Plaintiffs' purposes.

(Am.Compl. at ¶ 28.) Plaintiffs further allege that "upon giving such advice about flood insurance, the Defendants had a duty to put the real insurance needs of the Plaintiffs, and those similarly situated before their own profit motives." (*Id.*) Moreover, Plaintiffs contend that Defendants breached that "duty by recklessly, willfully, and intentionally concealing from the Plaintiffs the existence of and advantages of the Preferred Risk Policy, steering and encouraging the Plaintiffs to purchase useless excess coverage because Defendants were putting their own profit motives above the needs of the Plaintiffs...." (*Id.* at ¶ 29.) [20]

As noted above, the Arrangement provides that:

> The parties [to the Arrangement] shall not be liable to each other for damages caused by inadvertent delay, error, or omission made in connection with any transaction under this Arrangement.... In the event that steps are not taken to rectify the situation and such action leads to claims against the company, the NFIP, or other related entities, the responsible party shall bear all liability attached to that delay, error or omission to the extent permissible by law.

44 C.F.R. 62, App. A, Art. IX. This provision adequately encompasses the Plaintiffs' allegations and suggests that the WYO company shall bear the costs of such claims against it.[21] Plaintiffs similarly al-

---

**19.** Defendants attempt to rely on § 61.5(e) as applicable to several of Plaintiffs' remaining claims. For the same reasons noted above, such an argument is unavailing.

**20.** The court notes that Plaintiffs allegation of reckless, willful, and intentional conduct in steering Plaintiffs to purchase the more expensive policy further suggests conduct outside the scope of the arrangement. *Cf. Moore,* 995 P.2d at 237 (Alaska 2000) ("Moreover, considering that the regulations do not cover the negligence of insurers or their agents, it seems highly unlikely that *willful* acts such as fraud or intentional misrepresentation would be covered.") (emphasis added).

**21.** The Arrangement provides that "[i]f it is determined [by the FEMA Office of General Counsel] that the claim is grounded in actions by the Company that are outside the scope of this Arrangement, the National Flood Insurance Act, and 44 CFR chapter 1, subchapter B, *and/or involve issues of insurer/agent negligence as discussed in Article IX of this Arrangement,*" the Administrator may decide that "any award or judgment for damages arising out of such actions will not be recognized under Article III of this Arrangement as a reimbursable loss cost, expense or expense reimbursement." 44 C.F.R. 62, App. A, Art. III.D.4.

lege Defendants negligently misrepresented "the nature and amount of coverage available to and appropriate for the Plaintiffs." (Compl. at ¶ 34.) Such claims are cast in the same light as the negligence claims because the Arrangement does not cover the negligence of insurers or their agents. *See* 44 C.F.R. 62, App. A, Art. IX.; *Moore*, 995 P.2d at 237; *cf. Jamal v. Travelers Lloyds of Texas Ins.*, 129 F.Supp.2d 1024, 1029 (S.D.Tex.2001) (citing *Spence*, 996 F.2d at 796) ("Actions complaining of misrepresentations made to induce the purchase of insurance, however, do not constitute 'coverage' disputes. Thus, state law tort claims for ... misrepresentation are not preempted in such cases.").

Finally, Plaintiffs allege that an implied contract was created when "Defendants solicited and offered to provide advice as to appropriate coverages to the Plaintiffs, and the Plaintiffs accepted such offer...." (Am.Compl.¶ 23.) The resulting contract was one for "the provision of appropriate insurance," (*Id.*), and implied in that contract, as in every contract in South Carolina, is a covenant of good faith and fair dealing, (*Id.* ¶ 26.) As an initial matter, the court is unaware of any law supporting the creation of an implied contract for the provision of appropriate insurance, and it appears that any such concerns are adequately protected in tort law. However, assuming such claims are viable, these claims, like the tort claims discussed above, do not touch upon conduct within the scope of the Arrangement.

Defendants next argue that a substantial federal interest in uniformity exists as to the standards governing policy issuance. The court recognizes that, in the claims context, "the flood insurance program is a child of Congress, conceived to achieve policies national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially," an interest in uniformity exists. *See, e.g., West v. Harris*, 573 F.2d 873, 881 (5th Cir.1978); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir.2000); *Linder & Assoc., Inc. v. Aetna*, 166 F.3d 547, 550 (3d Cir. 1999). However, the rules and regulations reflect no interest in uniformity of standards for policy procurement conduct outside of the Arrangement's scope.[22]

Also, "[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by the federal courts." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 807 (4th Cir.1996). However, such is not the case in this matter. As one court has stated: "It is hard to believe that the NFIP will be compromised merely if states subject WYO carriers to their normal rules that apply to the same carriers in non–NFIP contexts, all the more so since FEMA's own regulations contemplate that such suits will occur from time to time." *Davis v. Travelers Prop. and Cas. Co.*, 96 F.Supp.2d 995, 1003 (N.D.Cal. 2000).[23]

**22.** The court notes the WYO regulations do anticipate some state involvement by allowing for state auditing and regulatory control. *See,* 44 C.F.R.Pt. 62, App.B. Also, FEMA regulations accord substantial autonomy to WYO companies in SFIP marketing and claims adjustment. *See Spence,* 996 F.2d at 796 (citing 44 C.F.R. § 62.23(e) which states "a WYO Company shall utilize its own customary standards, staff and independent contractor re-

sources, as it would in the ordinary and necessary conduct of its own business affairs, subject to the [NFIA and regulations promulgated pursuant thereto].").

**23.** The court notes that the *Davis* court relied extensively on the decision in *Cohen v. State Farm Fire & Cas.,* 68 F.Supp.2d 1151 (C.D.Cal.1999). However, *Cohen* was rejected by its own author in *Scherz v. South Car-*

These circumstances indicate that any interest in uniformity regarding policy procurement and the alleged conduct in this case is minimal. This case is clearly distinguishable from those matters clearly within the scope of the Arrangement and particularly within the reach of federal jurisdiction such as claims handling. Those matters directly involve federal funds and the extensive regulatory regime created to deal with such matters. In the policy procurement context, and particularly under the facts of this case, the same interest in uniformity is not present given the slight risk that federal funds or the federal regime are implicated.

A similar analysis is applicable to Defendants' argument that allowing WYO exposure to state class action lawsuits would dramatically impact the Arrangement. Defendants contend that such exposure would require additional incentive from FEMA for these companies to participate in the program.[24] It is beyond peradventure to conclude that WYO carriers would demand incentive from FEMA to not engage in fraudulent conduct, or any other conduct, which is significantly outside the scope of the Arrangement.

Defendants also argue that a substantial federal question exists because the premiums at question are immediately deposited into the United States Treasury. Once deposited, FEMA regulates all circumstances attendant to premium refunds.[25] However, Plaintiffs are not seeking a return of the premiums, but damages from Defendants for their alleged tortious acts. *See Powers*, 2000 WL 1593401 at *3 ("It is significant that the claim asserted here is not for flood damage and is not for the return of premiums. It is for damages incurred as the result of being allegedly overcharged and misinformed. It was brought in state court and pled strictly as a tort claim."). While the measure of Plaintiffs' alleged damages may be the difference between the premiums they paid and the premiums they argue they should have paid had they been steered to the correct policy,[26] any recovery will not be a refund of premiums but instead damages. Moreover, Plaintiffs nowhere contend they did not receive the level of coverage afforded the policies for the premium amount they paid, but instead allege they bought, at Defendants' direction, a more expensive, unnecessary level of coverage. Thus, any recovery on the part of Plaintiffs could not be characterized as a refund of premiums.

## B. Significant Conflict

Even if substantial federal interests are at stake, "a significant federal interest

---

*olina Ins. Co.*, 112 F.Supp.2d 1000, 1005, 1008–10 (C.D.Cal.2000). Despite the questioned validity of the *Cohen* decision and the Davis court's reliance on the same, the above-quoted analysis remains persuasive. Importantly, the analysis in *Davis* relied upon by this court was not informed by *Cohen*.

**24.** The Arrangement is renegotiated every year including the rate structure and reimbursement structure for WYO carriers.

**25.** Article III.E. of the Arrangement provides the following:

Premium refunds to applicants and policyholders required pursuant to rules contained in the National Flood Insurance Program (NFIP) "Flood Insurance Manual" shall be made by the Company from Federal flood insurance funds referred to in Article II, Section E, and, if such funds are depleted, from funds derived by drawing against the Letter of Credit established pursuant to Article IV.

44 C.F.R. 62, App. A, Art. III.E.

**26.** For example, the Complaint alleges that Defendants have "proximately caused damages to the Plaintiffs in an amount which is the difference between the premiums actually paid by the Plaintiffs for the more expensive SFIP and the Preferred Risk Policy with the appropriate amount of coverage." (Am. Complaint ¶ 24.)

alone ... will not allow federal common law to displace state law." *Caudill,* 999 F.2d at 78. Federal common law displaces state law only when a "significant conflict" exists "between the federal interest or policy and the effect of the state law," or the state law as applied frustrates " 'specific policy objectives' of federal legislation.' " *Id.* (quoting *Boyle,* 487 U.S. at 507, 108 S.Ct. 2510) (citations omitted). Such a conflict is not present in this case.

Defendants' argument that such a conflict exists echoes the Fourth Circuit's analysis in *Caudill.* The Fourth Circuit found that a substantial federal interest existed in the Federal Employees Health Benefits contract and that interest required the application of a uniform rule. *Caudill,* 999 F.2d at 79. The court noted that "[a]pplication of state law to this federal contract would result in a patchwork quilt of benefits that varied from state to state under the same contract because of the vast differences in the common law of contracts from state to state." *Id.* at 78–79. Therefore, "the very application of state contract law would undermine the uniformity envisioned by Congress when it delegated the authority to interpret health benefit contracts to OPM. Application of fifty different state contract laws to FEHBA claims would entirely defeat the purpose of OPM review." *Id.* at 79.

Defendants contend that the same uniformity is required in the instant case. However, the court has effectively dealt with Defendants' arguments regarding uniformity. The court does note that Defendants argue logic dictates that since Congress sought to guarantee uniformity in how United States Treasury funds are placed at risk by establishing federal juris-diction for claims handling disputes, then such an intent equally applies to marketing and policy procurement disputes which do the same. However, as discussed above, United States Treasury funds are not at risk in this instance because Plaintiffs are not seeking a refund for overcharged premiums. Moreover, to the extent that federal funds are at stake when litigation costs are reimbursed, the court is confident in its above analysis that the claims in this action are not subject to reimbursement. Defendants' remaining uniformity arguments are also unavailing by virtue of the court's uniformity analysis concerning whether a federal interest is at stake which is equally applicable in this context.

### C. *McCormick v. Travelers Ins. Co.*

Finally, it is necessary to address Defendants' reliance in part on state court decisions which refused jurisdiction over claims similar to those in the instant action. In *McCormick v. Travelers Ins. Co.,* 86 Cal.App.4th 404, 103 Cal.Rptr.2d 258 (Ct.App.2001),[27] the plaintiffs sued a WYO company for wrongfully denying them insurance coverage under the policy when their home was flooded. The plaintiffs brought state-law claims for breach of insurance contract, breach of covenant of good faith and fair dealing, fraud, and negligent misrepresentation against the defendant. The court held that the federal courts have exclusive jurisdiction over the *state law* claims in the plaintiff's complaint regardless of whether one pleads contract, tort, or state statutory claims. *See id* at 268–69. In reaching this conclusion, the California court ignored the interplay between the exclusive federal jurisdiction granted by 42 U.S.C. § 4072[28] and the

---

**27.** Defendants also rely on *Seibels Bruce Ins. Co.'s v. Deville Condominium Ass'n,* 786 So.2d 616 (Fla.Ct.App.2001), which involved breach of contract claims and negligence due to failure to write the maximum coverage.

Although the court will only specifically refer to *McCormick* in this section, this court's analysis is equally applicable to *Seibels.*

**28.** See *supra* note 3.

determination of whether state law claims are preempted. Moreover, the court refused to recognize the critical distinction between policy procurement claims and those dealing with claims handling or processing.

The *McCormick* court stated in pertinent part:

> We see no basis for turning the jurisdictional question on a distinction between errors allegedly committed while explaining the scope of coverage to a new policyholder and the errors allegedly committed in interpreting the amount of insurance proceeds to which the policyholder is entitled following a loss. The breadth of activities WYO insurers pursue in furtherance of the NFIP encompasses procuring policies, servicing the accounts, and processing claims. At all of these stages of the insured/insurer relationship, the workings of the NFIP are intimately involved.

103 Cal.Rptr.2d at 268 (citations omitted). The court disagrees with the conclusion that federal involvement exists at all stages of the insured/insurer relationship. Such a conclusion ignores the exclusion, in various contexts, of federal involvement when conduct falls outside the scope of the Arrangement. Courts should consider the specific claim instead of making broad assertions that the NFIP covers *all* matters relating to flood insurance—particularly the area of policy procurement.[29] Moreover, this court disagrees with the *McCormick* court's refusal to recognize the difference between policy procurement issues and claims handling. Of critical importance is the lack of incentive for WYO carriers to deny claims. "NFIA regulations provide that FEMA will reimburse WYO insurers for the claims and the claims handling, as well as for the costs of defending a lawsuit based on claims handling...." *Messa*, 122 F.Supp.2d at 521–22. Conversely, WYO insurers may be tempted to engage in questionable practices "when trying to get potential customers to sign up for flood insurance in the first place." *Id.* In the instant case, instead of questionable conduct to convince insureds to obtain flood insurance, Plaintiffs allege wrongful conduct in the type of flood insurance Defendants steered them towards. However, the concerns are similar in either context.

The *McCormick* court, in refusing to follow the reasoning of the Alaska Supreme Court's decision in *Moore v. Allstate Ins. Co.*, 995 P.2d 231 (Alaska 2000),[30] went on to state:

---

**29.** Defendants also argue that the following final rule issued by FEMA is applicable in this case:

> Because the National Flood Insurance Program is national in scope and accomplishes a number of programmatic missions in addition to making affordable flood insurance generally available to the public, the SFIP provides that its terms cannot be altered, varied or waived except by the written authority of the Federal Insurance Administrator. The Administrator intends that the same benefits should be available to insureds wherever the insured property is located, or whether the policy is purchased from a WYO insurance company or from the Federal government. Thus, there is a need for uniformity in the interpretation of and standards applicable to the policies and their administration. Therefore, we have

> clarified the policy language pertaining to jurisdiction, venue and applicable law to emphasize that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law.

65 Fed.Reg. 60758–01 (October 12, 2000). Defendants contend that this rule demonstrates that FEMA intends all disputes "pertaining to" the SFIP "must be heard in federal court," and the dispute in this matter falls within that scope. For the reasons discussed throughout this Order, the court refuses to apply such an expansive meaning to the rule's "pertaining to" language.

**30.** This quote refers to *Moore v. Allstate Ins. Co.*, 995 P.2d 231 (Alaska 2000), discussed *supra*, where the Alaska Supreme Court rea-

Moreover, treating some claims as exclusively within the jurisdiction of the federal courts and some within the concurrent subject-matter jurisdiction of the state courts invites the very Balkanization of lawsuits FEMA forecasts with justifiable dread in its amicus brief.

\* \* \* \* \* \*

Therefore, were we to follow *Moore*, we would necessarily put our imprimatur on the McCormicks' strategy of allowing them to litigate in a federal forum their coverage dispute (which a state court unquestionably does not have jurisdiction to decide), while allowing their misrepresentation and related state claims to repose in state court awaiting the outcome of the federal action. Surely, this orphaning of the "child of Congress" to 50 state court jurisdictions was not the intention of Congress in establishing "a pervasive and comprehensive scheme of federal regulations setting forth the rights and responsibilities of insureds and insurers under the NFIP."

103 Cal.Rptr.2d at 268 (citations omitted). In the instant case, there is simply no risk of the forewarned "Balkanization" of claims for several reasons. For instance, in *McCormick* the plaintiffs were asserting breach of contract claims based on a denial of benefits in addition to claims involving policy procurement. Thus, the breach of contract claims based on the SFIP were clearly within the exclusive jurisdiction of the federal courts and could not be heard in state court. *See* 42 U.S.C. § 4072. The instant case only involves state law causes of actions relating to policy procurement-claims not within the federal courts' exclusive jurisdiction. The *McCormick* court's

refusal to recognize the distinction between policy procurement issues and coverage claims ignores the significance of that distinction when, as in the instant case, the court is faced with solely policy procurement claims. For that reason, the court's apocalyptic vision regarding the "Balkanization" of such claims is simply inapplicable to this case.

Furthermore, the *McCormick* court was faced with an anomalous procedural posture. The case was originally filed in state court, removed to federal court, and then remanded for procedural defects in the removal process without any consideration by the district court of the federal jurisdictional and preemption issues that had been raised by the defendant. *See* 103 Cal. Rptr.2d at 260. Presumably, the district court would have retained jurisdiction over the entire case by exercising its supplemental jurisdiction had there been no defects in the removal process. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Thus, cases filed originally in state court and involving both contractual claims based on a SFIP within the exclusive jurisdiction of the federal courts and state law claims would normally be successfully removed. Accordingly, no true risk of any "Balkanization" of claims between federal and state court exists. For the above reasons, the court finds *McCormick* unpersuasive.[31]

soned that a WYO is subject to Alaska state court jurisdiction for claims of misrepresentation and fraud in misrepresenting the scope of flood insurance procured under the NFIP. *Id.* at 237. Both *McCormick* and *Seibels* declined to follow the Alaska Supreme Court's reasoning.

31. The court notes also that state insurance regulators, including South Carolina's regulator, have disclaimed any jurisdiction or regulatory control over NFIP matters. *See* (Csiszar Aff.) However, this fact does not affect those state common law duties which WYO

## IV. *CONCLUSION*

In sum, claims based on conduct such as concealing or neglecting to apprize insureds of less expensive options concerning flood insurance do not present substantial federal questions warranting the exercise of jurisdiction pursuant to 28 U.S.C. § 1331. While the NFIP is central to this case factually, the legal issues in this case deal predominately with state law.

It is, therefore,

**ORDERED,** for the foregoing reasons that Plaintiff's Motion to Remand is hereby **GRANTED,** and this action remanded to state court.

**AND IT IS SO ORDERED.**

companies are subjected to as insurance car- riers.